# FORD J. TWAITS CO. et al. v. UTAH STATE TAX COMMISSION

No. 6664. Decided April 24, 1944. (148 P. 2d 343.)

See 37 C. J. Licenses, sec. 90. Constitutionality, construction, and application of general use tax or other compensating tax designed to complement state sales tax, note, 129 A. L. R. 222.

*Harley W. Gustin,* of Salt Lake City, and *M. Earl Marshall,* of Tooele, for plaintiffs.

*Wayne L. Christofferson* and *Aldon J. Anderson,* both of Salt Lake City, for defendant.

LARSON, Justice.

Defendant, hereinafter called the commission, levied an assessment against plaintiffs, hereinafter called contractors, under the Use Tax Act, and the contractors sue out this writ of review. The action grows out of the construction by the contractors of the Tooele Ordnance Depot for the United States Government, as general contractors under a lump sum contract. Most of the materials used were purchased outside of the state and so not subject to the state sales tax. After completion of the work, the commission audited the contractors' accounts and assessed a use tax against them in the sum of $28,010.57, being 2% on price of materials purchased outside the state plus freight paid on such materials; $2,723.59 penalty for non payment; and $2,882.31 interest to October 1, 1943, a total of $33,616.47.

Contractors seek review of the proceedings. There is no dispute as to the facts or the figures.

Contractors assail the assessment on four grounds: (1) That the property here involved was purchased, stored and used entirely by the U. S. Government or one of its agencies, and therefore the state may not tax said property or transaction; (2) there is no statutory authority for the creation of a purchaser liability for the use tax; (3) transportation costs born by the purchaser may not be included in the sale price to determine the amount of tax due; (4) the statute does not authorize assessment of penalties and interest against a purchaser failing to make a tax return. We consider the objections in order.

(1) The contract between plaintiff and the United States Government provides that the contractors shall furnish all materials and labor for the construction. While the contract does not specify the manner of making purchases of material, Article 10 reads in part:

"The contractor * * * shall be responsible for all materials delivered and work performed until completion and final acceptance."

From the audit report made by the commission, it appears that the course of business was for plaintiff to pay for materials with its own vouchers, payable to the vendor. Reimbursement would be made by the government according to the terms of the contract, as the work was completed. Title to materials did not pass to the government until payment was made for them by the government. The contract provided that partial payments were to be made monthly, and Article 16(c) reads:

"All materials and work covered by partial payments shall *thereupon* become the sole property of the government." (Italics added.)

Article 31 reads:

"Unless otherwise indicated, the prices herein include any federal, state and local tax or charge heretofore imposed which is applicable to the supplies or work covered hereby * * * if in case of an increase in an existing tax or the imposition of a new tax the con-

tractor has paid such tax or charge to the Federal Government or a state or local government, or any person, then the prices herein will be increased or decreased accordingly and any amount due to the contractor as a result of such change will be charged to the Government and entered on vouchers (or invoices) as a separate item: Provided, however, that the Government reserves the right to issue to the contractor in lieu of such payment a tax exemption certificate or certificates acceptable to the Federal Government or state or local government, as the case may be * * *."

Keeping in mind the foregoing provisions, the contract can only be interpreted as one requiring the contractor to purchase materials on his own account for the work to be done, and not as an agent of the government. The parties contracted with knowledge of certain local sales and use taxes, and the government reserved the right to issue exemption certificates as necessary to avoid payment of new or additional taxes. No certificates were issued in the instant case. In view of *Alabama* v. *King & Boozer,* 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, 140 A. L. R. 615, and *Curry* v. *United States,* 314 U. S. 14, 62 S. Ct. 48, 86 L. Ed. 9, both holding that an independent contractor is not exempt from sales and use taxes merely because he purchases materials for incorporation into a government project, it is apparent that the government did not intend in the instant case to exempt plaintiff from any local taxes. Had it so intended, it would have been a simple matter to authorize plaintiff to buy as an agent of the government, to issue a tax exemption certificate referred to in Article 31 of the contract, or otherwise declare the goods government property. Further authority for the proposition that an independent contractor purchasing goods for use on government projects is not exempt from sales and use taxes is the *Utah Concrete Prod. Corp.* v. *State Tax Commission,* 101 Utah 513, 125 P. 2d 408. The determination of the commission that the purchases were taxable, was proper and the same is affirmed.

(2) The Use Tax Act of 1937 is an excise tax imposed upon the privilege of storing or using property within

this state, and liability for the tax is imposed upon the person so storing or using the property. 80-16-3, U. C. A. 1943. Such person is the one ultimately responsible ▆▆ for the tax. He may discharge this liability though by payment of the tax to the retailer from whom he purchases the goods. 80-16-2 (j). It is provided that the retailer, as that term is used in the act, is responsible for the collection of the tax, and when collected, it is a debt due from the retailer to the state. 80-16-6. Retailers are required by the act to register with the commission, giving the names of agents and places of business within this state. 80-16-5. "Retailer" as defined by the act is any person making sales of tangible personal property for storage or use within this state. 80-16-2 (f). But it is of no effect for the legislature to provide obligations upon *all* retailers wherever they may be, for the legislative power ends at the borders of this state. Obviously, the retailers required to register by the section cited above are only those engaged in business within this state—having agents or places of business within the state upon which to report. This same interpretation should be put upon "retailer" as used in the section where it is provided that the retailer is responsible for the collection of the tax, etc. 80-16-6. The word "retailer" should be construed wherever it is found in the act, to mean and include only such retailers as are subject to registration, or only such as have a place of busines, or agents within the state. Since contractors did not make the purchases here sought to be taxed from retailers registered, or subject to registration under the provisions of the act, the sections referring to the obligations of retailers in collecting and paying the tax to the state are not involved in this case. Under the act the term "taxpayers" includes: "every person storing, using or consuming tangible personal property, the storage, use or consumption of which is subject to the tax imposed by this act when such tax is not paid to a retailer." 80-16-2 (j). Since it is not claimed that contractors paid the tax to the people from whom they made these purchases, whether they were "retailers" or not, they are included in the term

"taxpayer" as here used. 80-16-7 provides for making of returns and payments by "every taxpayer." As shown above, in this case the contractors are taxpayers.

(3) The commission was in error in including transportation costs paid by contractors in the gross amount of purchases for the tax base. The only pertinent reference in the statutes is 80-16-2 (d) : ■

" 'Sales price' means the total amount for which tangible personal property is sold, including any services that are a part of the sale, valued in money, whether paid in money or otherwise, and includes any amount for which credit is given to the purchaser by the seller without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service cost, interest charged, losses or any other expenses whatsoever; provided, cash discounts allowed and taken on sales shall not be included, or shall the sales price include the amount charged for labor or services rendered in installing, applying, remodeling or repairing property sold."

The question is then whether the freight paid by contractors is a part of the sale price, being included as a service cost, or "other expenses." From the evidence in the record it could not be so. The commission's audit of contractors' books shows that all freight charges were paid by contractors directly to the various carriers by which goods were shipped. In other words, plaintiff purchased the materials at a price fixed at seller's place of business, took possession thereof and shipped those goods on its own account, and its own risk, paying the freight charges by its own check. How then can the freight charge be a part of the sale price? It is an entirely separate transaction, the sale being complete before shipment ever occurred. The situation is not at all analogous to that considered by the court in *State v. Menefee Motor Co.*, 18 L. App. 694, 139 So. 61, wherein it was held that an automobile dealer could not deduct freight charges paid by him from the gross amount of sales for license tax purposes. The commission was in error in its determination wherein it included freight charges as part of the sale price, and for that reason its assessment as made must be annulled.

. (4) Merely to set out the statute is sufficient answer to contractors' contention that penalties and interest for failure to file a return are not authorized thereby. ■ 80-16-10, U. C. A. 1943, reads:

"If any person neglects or refuses to make a return required to be made by this act, the commission shall make an estimate for the period or periods in respect to which such person failed to make a return * * *. Such return shall be prima facie correct for the purposes of this act and the amount of tax due thereon shall be subject to the penalties and interest as provided in section 9 hereof. * * *"

80-16-9, above referred to as section 9:

" * * * If any part of the deficiency for which a determination of an additional amount due is made is due to negligence or intentional disregard of the act or authorized rules and regulations, but without intent to defraud, a penalty of ten per cent of such amount shall be added, plus interest at the rate of one per cent per month from the time the return was due. * * *"

These sections are self-explanatory, and clearly give the commission the authority to assess the penalty and interest here imposed.

Under the provisions of 80-16-11, U. C. A. 1943, this court is authorized to affirm, modify or vacate an order of the State Tax Commission. The assessment is annulled and vacated. Cause remanded to the commission, with directions to recompute the deficiency assessment, penalty and interest upon the purchase price of the merchandise as shown by the record, without including therein the freight charges referred to in the opinion. Each party to bear their own costs.

WOLFE, C. J., McDONOUGH and WADE, JJ., and WILL L. HOYT, District Judge, concur.

MOFFAT, J., deceased.