[Civ. No. 21393. First Dist., Div. Three. Mar. 18, 1964.]

SANTA CLARA SAND AND GRAVEL COMPANY, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

Fred F. Cooper for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Ernest P. Goodman, Harry W. Low and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Respondent.

DEVINE, J.—The action is one for refund of sales tax which was paid by appellant corporation under protest. From judgment that plaintiff take nothing, plaintiff appeals. Two contracts to which appellant was a party give rise to the dispute between appellant and the State Board of Equalization.

## General Facts

The general facts, as well as certain others given under other headings, are agreed upon in a stipulated statement, but more particular facts were testified to. Ball and Simpson Company was engaged in a job on the Bayshore Highway in Santa Clara County. Ball and Simpson made a written contract with appellant to haul Ball and Simpson's borrow (sand and gravel) on the job from a pit owned by Swenson. It is not now disputed that this was simply a hauling contract, and not a sale. Appellant did not own any of the borrow. Ball and Simpson paid Swenson by one check, and by separate check paid appellant 57 cents per ton for the hauling job. Respondent has abandoned a claim that a sales tax is assessable against appellant on this transaction. Mere hauling is not subject to the tax. (Rev. & Tax. Code, § 6011, subd. (g); Cal.Admin.Code, tit. 18, § 2028.) The action, therefore, does not have to do directly with the Swenson transaction.

After some deliveries, it was found that the Swenson borrow did not meet the state's specifications. Appellant then offered Ball and Simpson dirt from two pits which it had leased and operated. This was accepted. Sales tax on the amount delivered was charged on the basis of 60 cents per ton.

The second contract which the court held to produce a sales tax was one of appellant with A. J. Raisch Paving Company, to which appellant delivered borrow for the manufacture of asphalt at its plant on Monterey Road, Santa Clara County. In this transaction, there was no prior contract such as the Swenson contract in the Ball and Simpson transaction.

### 1. *The Ball and Simpson Contract*

The question is whether title passed at the pits or plantsite, so that sales tax would be charged on a price at the pits, as claimed by appellant, or at the jobsite, where the price would be about 15 times as great, as claimed by respondent. It must be considered at the beginning whether the contract of appellant with Ball and Simpson relating to borrow taken from the Swenson pit was superseded by an oral contract between the parties. Appellant claims that the contract remained and could not be varied by oral negotiations, and that since it is described by its own terms to be a subcontract to perform work, namely, loading, weighing, hauling and dumping *contractor's* (Ball and Simpson's) material, title would pass at the plantsite throughout the whole supplying of borrow to Ball and Simpson for the job.

The court found that upon acceptance of the offer of appellant to supply its own borrow instead of the unsatisfactory Swenson borrow, the contract ''was changed from a hauling contract to a contract to sell plaintiff's personal property.'' This we find to be the reasonable conclusion. Under the Swenson arrangement, title never passed from appellant to Ball and Simpson. Appellant never owned the Swenson borrow. The contract had to be one of hauling and not of sale. When title left Swenson, it went to Ball and Simpson.

The new arrangement was essentially different. Appellant had leased the two pits. It gained title to the dirt by paying royalties to the owners. It passed *title* to Ball and Simpson, at some point, which was not so before. The parol evidence rule does not invalidate a new oral agreement made after a written contract has been orally abrogated. (*McKeon* v. *Giusto,* 44 Cal.2d 152, 156 [280 P.2d 782].) The change in subject matter described above is sufficient to have caused the court to conclude that the parties intended a new contract.

If, as the court found, title did not pass until de-

livery, the full delivered price is the basis of the tax. (Rev. & Tax. Code, § 6006, subd. (a); *Select Base Materials* v. *Board of Equalization*, 51 Cal.2d 640, 646-648 [335 P.2d 672].)

■ Evidence supporting this finding is: (1) The seller was obliged to make delivery to the place designated by the buyer. ■ Rule 5 of section 1739 of the Civil Code (§ 19 of the Uniform Sales Act) applies, which provides that unless a contrary intention appears, if the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon. (*O'Kelley-Eccles Co.* v. *State of California*, 160 Cal.App.2d 60, 64 [324 P.2d 683].) ■ Payment for borrow was based on the amount that was delivered to the jobsite, not on a designated amount as loaded at plantsite. The borrow had to meet state specifications, the determination of quality being made at the jobsite. (2) A single payment of 60 cents per ton for qualified borrow was made, not a separate payment for hauling, as had been the case with Swenson's contract, where separate checks were drawn by Ball and Simpson. (3) A deduction was made for moisture in the borrow delivered at the jobsite. (4) There was no designation of pits from which borrow was to be obtained. The cost of obtaining the material which appellant obtained by paying royalties to owners of two pits, and the cost of hauling, were entirely up to appellant to determine and to control. The price paid by Ball and Simpson was the same, 60 cents, for material obtained at a royalty of 4 cents per ton and that obtained at 3 cents per ton at different pits. The delivered product, therefore, appears to have been the only thing the buyer was concerned with. (5) No showing was made, either by stipulated fact or by evidence at the trial, of the intent of the appropriate officers of Ball and Simpson as to the time and place of passage of title. (We observe that it may very well be that Ball and Simpson would not care to take the risk of loss of the material between plantsite and jobsite, by taking title at the plantsite.) (6) Selection of the trucker was left to appellant. A corporation for the purpose of delivery was formed when the appellant's business progressed beyond its original one of manufacturing asphalt, and this corporation, MacDonald and Dorsa Transportation Company, made the deliveries to Ball and Simpson. (7) Appellant's invoices to Ball and Simpson were all "f.o.b. jobsite." ■ The usual

meaning of provision for delivery f.o.b. the point of destination is that title does not pass until delivery to the buyer. (*Lewis* v. *Farmer's Grain & Milling Co.*, 52 Cal.App. 211 [198 P. 426] ; 2 Williston on Sales, § 280.)

At this point, the parties departed from the stipulated facts and presented testimony to the trial court. It was appellant's contention, and still is, that the billing employees of the company made the invoices "f.o.b. jobsite" by mistake. The court heard testimony and found that appellant "did not mistakenly mark 'f.o.b jobsite' on invoices for dirt supplied Ball and Simpson from the pits which plaintiff leased and operated."

There is substantial evidence to support this finding. It is: (a) All of the elements listed above tend to show that f.o.b. jobsite was a proper designation. (b) Appellant's billing clerks were under the instruction of an office manager. There were changes in personnel, and the new employees would be instructed in billing. But all of the billings to Ball and Simpson over a period of 33 months were f.o.b. jobsite. (c) The staff did bill sales for resale correctly, whereby no tax resulted. (d) On a certain job for supplying and delivering material to Cupertino High School, different billings, f.o.b. jobsite and f.o.b. plantsite, were required for different materials supplied, leading to an inference which the trial judge evidently drew (he mentions the matter in the findings), that appellant's staff was capable of making the distinction.

Appellant argues that mistake is shown by the fact that even as to the Swenson transaction, billing was "jobsite," although the written contract was one of hauling. The court found, indeed, that this was a mistake, but found that there was no mistake in the later invoicing. The trial court had discretion to make this distinction, based on all of the circumstances related above.

Appellant points out that the invoicing set forth a breakdown of the total of 60 cents, namely, one sum for the material and another sum for the transportation of the material to Ball and Simpson. So did some of the invoices of the seller in *Select Materials* v. *Board of Equalization, supra,* 51 Cal.2d 643, but the whole price was held to be the tax base. The entire transaction must be looked to in order to find its true nature.

Finally, appellant argues that respondent's position clashes with its own regulation in title 18, California Administra-

tive Code, section 2028, which provides that the sales tax does not apply to separately stated charges for transportation provided the transportation is by "other than facilities of the retailer, i.e., independent contract or common carrier, United States mail," and that it is immaterial in such case where title passes, unless the property was sold for a delivered price.[1] But the court found that the cost of delivery was part of the plaintiff's gross receipts and constituted a part of the sales price, and that the purchaser was interested only in buying for a designated delivered price, a finding which we sustain. (It is doubtful, besides, that appellant has shown that the carrier was engaged by an independent contract between it and appellant. The evidence is sketchy here, but it appears that MacDonald and Dorsa was closely associated with appellant.)

## 2. *The A. J. Raisch Paving Company Contract*

A written memorandum, in the form of a letter from the A. J. Raisch Paving Company to Steve Dorsa, and signed by the Raisch Company and by Steve Dorsa, is contained in the stipulated facts. (Although Dorsa signed the memorandum, apparently in his personal capacity, and the name of appellant company does not appear, and the only corporation referred to is the "transportation company," both parties treat the agreement as appellant's.) The letter states the agreement to be that: (1) Raisch will pay "your transportation company" 36 cents per ton for materials hauled from Tennant Avenue (the pit owned by appellant) to Raisch's plant No. 85 on Monterey Road; (2) Raisch will rent "your Michigan loader" for 19 cents per ton less cost of labor of the operator; Raisch is to hire the operator; (3) royalty for materials removed to be paid at 30 cents per ton; trucks to be weighed on random basis by Raisch and average load to be struck.

Raisch did not hire the operator of the loader. Appellant employed him. Appellant billed Raisch periodically on a single invoice a total of 85 cents per ton for the materials delivered to A. J. Raisch pursuant to the contract. The board assessed sales tax on the sum of 85 cents per ton gross receipts. The invoice prepared by appellant set forth several

---

[1]The regulation at the time of the transaction was not quite this, but since it was then somewhat less favorable to appellant, we need not discuss the difference.

items: 30 cents per ton for the material, and handling and equipment rental of 55 cents per ton. All billings were "f.o.b. jobsite" (plant No. 85, Monterey Road, Santa Clara County). Later, the Tennant Avenue pit's material was temporarily exhausted or overburdened, and the source for the materials delivered was changed to appellant's Puppo pit Because the hauling cost to appellant was greater from the Puppo pit than from the Tennant Avenue pit, the total charge to Raisch was 90 cents per ton "f.o.b. jobsite." The board assessed sales tax on the 90 cents per ton gross receipts shown on those invoices. Later, the supply at the Tennant Avenue pit again became available and the overburden removed. The deliveries were again made to Raisch from that pit at a price of 85 cents per ton. The board then assessed sales tax on the 85 cents per ton gross receipts shown on the invoices prepared by appellant and paid by Raisch.

Appellant's first claim is that this transaction was one having to do with real property; that there was not a sale, but the creation of a *profit à prendre* from appellant to Raisch and a transportation contract; that, therefore, no sales tax is chargeable.

 Although the memorandum refers to "royalty" for materials removed, the nomenclature does not bind the Board of Equalization as a third person, not party to the contract. (*Budd* v. *Hughes*, 176 Cal. 687, 689-690 [171 P. 287]; *Broder* v. *Epstein*, 101 Cal.App.2d 197 [225 P.2d 10]; *People* v. *Chait*, 69 Cal.App.2d 503, 519 [159 P.2d 445]; Witkin, Cal. Evidence, § 377, p. 421.) The true nature of the contract must be looked to. The trial judge found that the sale was not of real property but of tangible personal property. The finding is supported.

 Raisch Company did nothing by way of "taking" the material. Taking is of the essence of what is called a *profit à prendre*. The memorandum does not contain such a description of the land as is proper to a *profit à prendre*. It refers to the "Tennant Avenue Gravel Deposit," but nothing is said about the amount that may be taken nor about duration of a right conveyed. A *profit à prendre* is an interest in the land itself and it creates a covenant running with the land as distinguished from a mere personal obligation of the owner of the property. (*Richfield Oil Co.* v. *Hercules Gasoline Co.*, 112 Cal.App. 431, 434 [297 P. 73].)

 The substances which may be taken are part of the

realty until severed and brought under control, and when this is done, they are personal property and subject to sale as such (*id.*, p. 435). No part of this transaction brought Raisch into the operation of severing anything from the land. It simply bought personal property which had been severed by appellant. The quantity for which payment was to be made was measured by the amount delivered by the trucks selected by appellant.

 Appellant takes a second position about the Raisch contract. It says that in event the court rejects the *profit à prendre* theory, then only the charge for materials, 30 cents out of 85 cents, is taxable.

As in the Ball and Simpson contract, the trial judge found that title did not pass until delivery was made, that cost of delivery constituted part of the sales price, and that the buyer was interested only in a delivery price. This is supported by several items of direct evidence and fair inferences from them. (1) The fact that an illusory real property element was given to the transaction makes it difficult for appellant to say that there was a true sale of severed personal property at the pits and to insist that a particular portion, 30 cents per ton, of the whole amount paid, 85 cents per ton, is to be allocated to sale of material for tax purposes. (2) No testimony was presented to show the point at which Raisch considered title to pass. In fact, there is no direct evidence as to the point when appellant intended title to pass. Here, as in the Ball and Simpson contract, it seems that Raisch was going to pay for what it got at the place of delivery, and was not concerned with amount of product at plantsite nor of acquiring title before transportation by appellant's allied company. (3) The invoices were "jobsite," as in the Ball and Simpson contract, and the same reasoning applies here as there.

 Appellant argues that the fact that Raisch paid an extra five cents per ton when a more distant pit had to be used temporarily shows that a "delivered price" was not contemplated, because Raisch could have refused to pay this extra sum. But the written agreement referred to sales from the Tennant Avenue pit only. The parties were free to agree on a different price for the supplies coming from another pit. The fact that increased cost of transportation may have been considered as giving rise to a higher price during the temporary overburden of Tennant Avenue, does not demonstrate

that the sale and transportation were separate transactions under all of the circumstances.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied April 17, 1964, and appellant's petition for a hearing by the Supreme Court was denied May 13, 1964.