[Civ. No. 56301. Second Dist., Div. Four. Apr. 16, 1980.]

TOBI TRANSPORT, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Karns & Karabian and Nicholas C. Bliga for Plaintiff and Appellant.

George Deukmejian, Attorney General, Philip C. Griffin and Lawrence K. Keethe, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**WONG, J.\***—Plaintiff has appealed from a judgment rendered in favor of defendant in an action which sought a refund of sales taxes paid by plaintiff. At the time of trial the matter was submitted to the trial judge, sitting without a jury, on a stipulation of facts and trial briefs.

The court rendered findings of fact and conclusions of law, concluding that sales taxes were owed by the plaintiff on moneys charged for the pumping of cement, because the pumping operation is part of the sale and transportation of the goods, and the sale is not completed until the conclusion of the pumping. Appellant contends that the sale is completed when the cement is delivered to the purchaser's construction site and before the service of pumping the cement commences.

*Factual Summary*

The stipulation of facts reflects that between January 1, 1971, and December 31, 1973, plaintiff was engaged in the business of manufacturing and selling ready-mix concrete under the name "Bohannan Brothers" and providing pumping services for placing concrete in areas difficult to reach, under the name "Delta Pump Service." Customers of plaintiff can buy the concrete separately, can engage only the pumping services, or can order both the concrete and the placement thereof.

---

*Assigned by the Chairperson of the Judicial Council.

The sale of concrete and pumping service "constitutes a single transaction, using two invoices." The customer's order is placed by telephone. The sale of the concrete is written up on an invoice entitled "Bohannan Brothers Ready-Mix Concrete" and the pumping service charges, if ordered, are on an invoice entitled "Delta Pump Service." No written agreement exists between the plaintiff and the customer, and no explicit agreement exists between them as to when title to the concrete passes to the customer.

In computing the applicable tax, plaintiff includes in the measure of tax the charges for transporting the concrete by truck to the job site, but excludes charges for pumping the concrete. The concrete is prepared at plaintiff's business premises and transported by its own trucks; any risk of loss is borne by plaintiff.

On arrival at the job site, an employee gives the customer notice that the concrete has arrived and is ready for disposition according to the customer's instructions. The customer then directs the truck driver to a particular area of the job site for the pumping of the concrete.

The defendant completed an audit of plaintiff's business for the period in question, and on April 22, 1974, concluded that the sum of $137,107 for pumping services had been improperly excluded from the measure of sales tax. A notice of determination to that effect was issued, following which plaintiff filed a petition for redetermination. A hearing was held on January 16, 1975; the hearing officer recommended that no adjustment be made in the measure of tax.

Thereafter, plaintiff paid approximately $9,000 in tax, under protest, and filed a claim for refund; that claim was denied by the defendant, and the instant lawsuit followed.

### The Taxability of the Pumping Operation

California sales tax is imposed on a retailer, measured by the "gross receipts" from his sale of all tangible personal property. (Rev. & Tax. Code, § 6051;[1] *Western L. Co.* v. *State Bd. of Equalization* (1938) 11 Cal.2d 156, 162 [78 P.2d 731, 117 A.L.R. 838].)

---

[1]Unless otherwise stated, all statutory references are to the Revenue and Taxation Code.

Gross receipts are defined in section 6012 to mean the total amount of the sale or lease or rental price, without any deduction on account of the cost of transportation of the property. The exception stated in section 6012, to the inclusion of charges for transportation, is "with respect to transportation which occurs after the sale of the property is made to the purchaser." (§ 6012, subd. (c)(7).)

■ Appellant contends that although the pumping of the concrete is "final transportation," it occurs after the sale of the concrete is made to the purchaser. Respondent argues, and the trial court found, at conclusion of law No. 2: "Title to concrete sold by Tobi in conjunction with pumping services provided by Tobi passed to Tobi's customers after the pumping operation had been performed."

In determining when a sale has occurred, for purposes of applying the exception noted in subdivision (c)(7) of section 6012, the board has promulgated regulation 1628 (Cal. Admin. Code, tit. 18, § 1628 (b) (3)(D).) That regulation incorporates the language of California Uniform Commercial Code section 2401, subdivision (2) and states: "Unless explicitly agreed that title is to pass at a prior time, the sale occurs at the time and place at which the retailer *completes his performance* with reference to the physical delivery of the property... [T]he contract requires delivery at destination...the retailer completes his performance with reference to the physical delivery of the property on tender there." (Italics added.)

Both parties agree that the foregoing language is determinative of whether the transportation here was complete before or after the pumping began, but each interprets the test differently. Respondent contends that the plaintiff has not "completed his performance" until the concrete has been pumped. Appellant asserts that his performance was completed on "tender" of the concrete, i.e., when the truck arrived at the construction site and notified the customer of the presence of the merchandise. We are persuaded that appellant had not completed his performance, under the terms of the invoices here in question, until the concrete had been pumped.

Although we know of no cases addressing the precise issue before us, we note that the State Board of Equalization on November 2, 1966, issued the following ruling: "Where concrete, discharged from ready-mix trucks, is pumped through hoses or pipes to the point of use on the job,

the pumping operation is essentially a transportation function, and the charges therefor shall be treated as transportation or delivery charges." (¶ 60-354 (73) Cal. Tax Reptr., Commerce Clearing House.)

In addition, consideration should be given to the board's administrative interpretation of the section, as reflected in the determination issued by the hearing officer in this case. Neither the board's interpretation nor the above 1966 ruling, however, are binding on this court.

"We recognize that the board's decisions represent a settled administrative construction of the statute which must be given great weight. (See *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756...) It is, however, 'the duty of this court, when...a question of law is properly presented, to state the true meaning of the statute... even though this requires the overthrow of an earlier erroneous administrative construction.' (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326....)" (*Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494, 498, at fn. 6 [108 Cal.Rptr. 1, 509 P.2d 945].)

Our evaluation of the facts of this case and the language of the controlling statutes convince us that the plaintiff had not completed his performance by tendering the concrete to the purchaser until he had placed the concrete on the job site, as requested by the customer. The stipulated facts concede that the sale of concrete and pumping services was "a single transaction" using two invoices. Although the customer could have purchased only concrete, to be left at the job site for pumping or placement by the customer's own employees, he did not. The concrete was not "tendered" to the customer when it was first brought to the job site because the customer had not purchased it to be brought to the site and left. There was no tender, and therefore no completion of performance, until it had been pumped.

Therefore, the pumping operation was a transportation function, which occurred before the sale of the concrete was completed, and the charges for the pumping service were taxable.

### The Pumping Operation as Services in Installation

This court requested additional briefing from the parties herein on the application of subdivision (c)(3) of section 6012 which provides

that "Gross receipts" do not include: "(3) The price received for labor or services used in installing or applying the property sold."

We have read and considered the supplemental briefs of counsel on this issue and have concluded that the pumping operation was properly classified by the board as transportation, and that there was neither installation nor application of the concrete at the construction site by appellant. Appellant's employee, the truck driver, pumped the concrete, usually into areas difficult to reach, below ground or several stories above ground. In so doing, he was following the directions of the customer, with respect to placement, i.e., transportation, of the concrete; he was not an installer thereof. Therefore, section 6012, subdivision (c)(3), has no application to the facts of this case.

We conclude that the sale of concrete was completed, and title passed to the purchaser, after the transportation of the concrete was completed; transportation was complete after the concrete had been pumped into the construction site as directed by the customer.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.