**REVENUE CABINET Commonwealth of Kentucky, Appellant,**

v.

**CORUM & EDWARDS, INC., Appellee.**

Court of Appeals of Kentucky.

Aug. 10, 1984.

John A. Miller, Legal Services Section, Revenue Cabinet, Frankfort, for appellant.

John E. Evans, Lucy Lee Helm, Barnett & Alagia, Louisville, for appellee.

Before CLAYTON, McDONALD and MILLER, JJ.

MILLER, Judge.

This is an appeal from the Franklin Circuit Court, affirming a decision of the Kentucky Board of Tax Appeals (board). KRS 131.310 and KRS 131.370. The board entered an order on September 16, 1982, holding that "zone charges" and "trip charges" (two different categories of delivery charges) exacted by appellee in its business of selling ready-mix concrete were not "gross receipts" from "sales" of personal property and therefore subject to taxation under our sales and use tax law. KRS Chapter 139 (Veterans' Bonus Sales and Use Tax Law). The Revenue Cabinet, Commonwealth of Kentucky (cabinet), brings this appeal. We affirm.

The facts of the case are these: Appellee Corum & Edwards, Inc. (company) is, and has been for many years, engaged in the business of manufacturing and selling ready-mix concrete in Madisonville and surrounding areas of western Kentucky. Ready-mix concrete is sold by the cubic yard, and orders are usually taken by phone. It is mixed from the components of cement, aggregates, water and other additives, depending upon the nature and quality of the concrete desired by the individual customer. The components are compounded into concrete by placing them in a rotat-ing mixer mounted on a motor vehicle. It takes four or five minutes and a few rotations of the mixer to convert the ingredients into concrete ready for "pouring" at a customer's job site. The mixing is usually accomplished before the truck leaves the company's premises, but the rotation of the mixer remains in process until the concrete is poured at the construction site. This is necessary to prevent the mixed material from "setting up" or "hardening" into an unusable state. If, after the components are mixed at the company's plant, the order is cancelled by the customer, the "custom and practice" in the industry requires the customer to nevertheless pay for his order. This not infrequently happens when rain intervenes or other conditions prevent pouring of the concrete at the job site. When this occurs, the company will sometimes find another customer to take delivery, but in absence of such, the material is wasted and the original customer is duly billed.

In practically all cases, the company delivers the mixed concrete to the customer's job site. However, a very few customers bring their own containers to the company's plant and purchase mixed concrete. Likewise, a few customers purchase the components at the company's plant and take them to the job site where they do their own mixing. In such cases, there is no delivery charge. When mixed concrete is delivered by the company, it is receipted for by someone on the job. Billing is made upon a per-cubic-yard price plus an additional charge for delivery. (In other words, the billing itemizes the delivery charge separate from the cost of the concrete.) Deliveries in the immediate area of Madisonville are subject to no delivery charge. Deliveries more than eight miles from the plant are subject to a delivery charge based upon mileage which is referred to as a "zone charge." Deliveries of small quantities, less than four cubic yards, are subject to certain charges known as "trip charges."

The cabinet makes three contentions for exacting a sales tax upon the proceeds of

the delivery charges. First, that the charges are a part of the gross receipts or sales price and, therefore, are subject to taxation. Second, delivery charges are incurred prior to passing of title and, therefore, subject to the sales tax. Third, delivery charges are subject to taxation because processing of the concrete occurs during delivery.

Essentially, we are concerned with the interpretation of several statutory sections, along with a regulation issued by the cabinet.

KRS 139.050, in relevant parts, provides as follows:

"GROSS RECEIPTS."—(1) *"Gross receipts" means the total amount of the sale, lease or rental price,* as the case may be, of "retail sales," or "sales at retail," valued in money, whether received in money or otherwise, *without any deduction on account of any of the following:*

.        .        .        .        .

(c) *The cost of transportation of the property prior to its sale to the purchaser.*

(2) *The total amount of the sale or lease or rental price includes all of the following:*

(a) *Any services that are a part of the sale;* (emphasis added)

.        .        .        .        .

KRS 139.100, in relevant parts, provides as follows:

"RETAIL SALE."—*"Retail sale"* or "sale at retail" means:

(a) 1. *A sale for any purpose other than resale in the regular course of business of tangible personal property,* ... (emphasis added)

.        .        .        .        .

KRS 139.120, in relevant parts, provides as follows:

"SALE."—(1) *"Sale" means ... any transfer of title or possession ... by any means whatsoever, of tangible per-*

*sonal property for a consideration ...* (emphasis added)

.        .        .        .        .

KRS 139.130, in relevant parts, provides as follows:

"SALES PRICE."—(1) *"Sales price" means the total amount for which tangible personal property is sold,* valued in money, whether paid in money or otherwise, *without any deduction on account of any of the following:*

.        .        .        .        .

(c) *The cost of transportation of the property prior to its purchase.*

(2) *The total amount for which property is sold includes all of the following:*

(a) *Any services that are a part of the sale;* (emphasis added)

.        .        .        .        .

KRS 139.200, in relevant parts, provides as follows:

IMPOSITION OF SALES TAX.—For the privilege of making "retail sales" or "sales at retail," a tax is hereby imposed upon all retailers at the rate of five per cent (5%) of the *gross receipts* of any retailer derived from "retail sales" or "sales at retail" made within this commonwealth ... (emphasis added)

.        .        .        .        .

KRS 355.2–401 (Uniform Commercial Code), in relevant parts, provides as follows:

PASSING OF TITLE—RESERVATION FOR SECURITY—LIMITED APPLICATION OF THIS SECTION.—

.        .        .        .        .

(2) *Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, ...* (emphasis added)

.        .        .        .        .

103 KAR 30:070, in relevant parts, provides as follows:

.        .        .        .        .

Section 2. Delivery by Facilities of the Retailer. (1) *Tax applies to charges for transportation of property to the purchaser by facilities of the retailer, unless:*

(a) *The transportation occurs after title to the property has passed to the purchaser,*

. . . . .

(3) *When property is processed during delivery in the retailer's vehicle delivery charges shall be considered a part of the selling price and subject to the sales and use tax.*

. . . . .

Section 5. *Determination of Place of Passage of Title.* When a retailer, by means of facilities operated by him, delivers tangible personal property to a place specified by the purchaser, or the property is sold for a delivered price, title will not be considered as passing to the purchaser until the goods reach the place specified, in the absence of clear and convincing evidence that both retailer and buyer intended that title should pass at some other place. Oral declarations of the parties after the transaction is completed are of little value as evidence, because of their self-serving nature. *The intention of the parties to transfer title to the buyer prior to delivery to him should be clearly expressed in writing constituting a part of the contract of sale, entered into by both parties prior to the transportation for which the charge in question takes place.*

We conclude, as we obviously must, that our law is designed to tax the gross receipts from sales of "tangible personal property." It is not designed to tax services, with the exception of specified situations enumerated in KRS 139.100(2), with which we are not here concerned. Under the foregoing statutory provisions, for the delivery charges to be taxable, they would have to be incurred "prior" to sale (KRS 139.050[1][c]) or be considered "services that are a part of the sale." (KRS 139.050[2][a]). We think they are neither. The services were separate and apart from the cubic-yard charges for the concrete. They varied from customer to customer, depending on the quantity purchased and distance hauled. Further, they were rendered, if at all, after the sale was transacted. We think it may be generally said that delivery charges rendered after passage of title are not "services that are a part of the sale" within the meaning of the code.

There is ample evidence in the record to support the fact that sale occurs in the ready-mix business when the ingredients are irretrievably mixed at the company's plant. It is at this point that the custom and practice in the industry as shown by the evidence, demands payment, for the goods are rendered useless for resale. If the customer fails to take delivery, the mixed concrete is "spoiled." Therefore, we hold that title passed in conformance with the custom of the industry and not according to statute. We note here that although the Uniform Commercial Code provides for title to pass upon delivery (KRS 355.2–401[2]), the same code provides for recognition of the custom of the industry. KRS 355.1–205(2).

Nor can we agree with the cabinet's contention that delivery charges are taxable where the goods are processed in transit (103 KAR 30:070[3]). The concrete is not processed in transit. The agitation en route is not a processing, but a preservative measure. Finally, in *Kurtz Concrete, Inc. v. Spradling,* 560 S.W.2d 858 (Mo. 1978), the Missouri court was faced with the same fact situation and law as the case at hand. The matter was treated as we have treated the case *sub judice.*

For the foregoing reasons, the judgment of the Franklin Circuit Court is affirmed.

All concur.