**HALES SAND & GRAVEL, INC., Petitioner,**

v.

**AUDIT DIVISION OF the STATE TAX COMMISSION OF UTAH, Respondent.**

**No. 910008.**

Supreme Court of Utah.

Nov. 12, 1992.

David Nuffer, Lyle R. Drake, E. Scott Awerkamp, St. George, for Hales Sand and Gravel.

R. Paul Van Dam, Brian L. Tarbet, Salt Lake City, for State Tax Com'n.

ZIMMERMAN, Justice:

This is a proceeding to review a sales tax deficiency assessment by the Utah State Tax Commission. Hales Sand and Gravel, Inc., petitions for review of the Commission's order requiring Hales to pay sales tax on transportation costs incurred in the delivery of building materials to its customers. We affirm the Commission's deficiency assessment but reverse the negligence penalty it assessed Hales for nonpayment.

Because a party seeking review of an order of an administrative agency must demonstrate that the agency's factual determinations are not supported by substantial evidence, we state the facts and all legitimate inferences drawn therefrom in the light most favorable to the agency's findings. *Zissi v. State Tax Comm'n,* 842 P.2d 848, 852 (1992); *First Nat'l Bank of Boston v. County Bd. of Equalization of Salt Lake County,* 799 P.2d 1163, 1165 (Utah 1990). We state the facts in this case accordingly.

Hales is a Utah corporation with its principal office in Redmond, Utah. Its primary business involves retail sales of sand, gravel, asphalt, and concrete. Purchasers may pick these materials up themselves; however, during the period at issue, approximately 95 percent of Hales' gravel purchasers and 70 percent of its asphalt purchasers

had Hales deliver their orders. When a customer elected to have the materials delivered, Hales either delivered the materials in its own trucks or arranged for transportation by a common carrier and billed the customer for the carrier's charges. If Hales delivered the material itself, its transportation charges were commensurate with those a common carrier would have charged.

Before March 1, 1987, Hales collected and remitted sales tax on the total charge for materials and transportation. After March 1, 1987, Hales recorded and invoiced material and transportation charges separately, collecting and remitting tax only on charges for materials, not on transportation charges. Hales employed this bifurcated method of record keeping and invoicing for all its sales, including sales to JTN Construction, Inc., a Utah corporation that three of Hales' four shareholders established to perform federal contracts.[1] Nor did Hales collect or remit sales tax for the "small-batch charges" it added to concrete batches that were too small to absorb the costs of delivery.

After an audit of Hales' records for the period of January of 1985 to December of 1987, the Auditing Division of the Utah State Tax Commission determined that under section 59–12–103(1)(a) and (b) of the Code, Hales should have collected and remitted sales taxes on its transportation charges after March 1, 1987, including the charges for small batches and for delivery to JTN. *See* Utah Code Ann. § 59–12–103(1)(a), (b). The total deficiency assessed was $128,792.49, which included a negligence penalty of $9,712.82. *See id.* §§ 59–1–401(3)(a), –12–110(5).

Hales contested the assessment, claiming that its transportation charges were exempt from sales tax. The Commission rejected Hales' claim, reasoning as follows: First, the Commission decided that Hales did not qualify for a tax exemption under section 59–12–104, which exempts "intra-

state movements of freight and express or street railway fares" from Utah's sales and use taxes. *See id.* § 59–12–104(18) (1987) (amended 1991) (current version at § 59–12–104(17)). The Commission interpreted the provision as applying only to common carriers. Second, the Commission decided that under its rule 865–19–71S, Hales did not pass title to its gravel, sand, concrete, and asphalt until it delivered the materials to its customers. This rule provides in relevant part that unless otherwise agreed, title passes on delivery when a sales contract requires delivery at a particular place. *See* Utah Admin.R. 865–19–71S. The Commission concluded that since Hales completed its performance only upon delivery, its transportation costs should be considered part of the price of the sale and the entire transaction should be subject to sales tax. *See* Utah Code Ann. § 59–12–103(1)(a), (b). Because Hales had collected sales tax only on the purchase price of its materials, the Commission assessed Hales sales tax for the transportation costs.

The Commission also considered two related matters. First, Hales claimed that it should not have had to collect or remit sales tax for the small-batch charges it added to concrete orders that were too small to absorb delivery costs. The Commission disagreed, finding that the small-batch charges were essentially nothing more than transportation charges, which therefore were subject to sales tax. Second, Hales argued that the Commission should credit it for taxes it had paid on sales to JTN that were made before March 1, 1987, because the Utah Department of Transportation had determined that Hales and JTN were the same entity for the purposes of federal labor law. Again the Commission disagreed, finding that Hales and JTN were separate legal entities and that their transactions were subject to sales tax. In sum, the Commission assessed Hales $41,739.95 for total sales tax due and $9,712 as a negligence penalty.[2]

---

**1.** The record suggests that the shareholders formed JTN to avoid paying Hales' employees the higher, federally mandated wages required of companies performing federal contracts. *See*

The Davis–Bacon Act, 40 U.S.C. §§ 276a to 276a–5.

**2.** The parties stipulated to these amounts before the Commission. The record is unclear as to

Before our court, Hales challenges all aspects of the Commission's order. *See id.* § 78–2–2(3)(e)(ii). Before examining Hales' claims, we note the applicable standards of review. This review presents questions of both law and fact. As provided by the Utah Administrative Procedures Act ("UAPA"), we grant deference to an agency's factual findings and will overturn those findings only if the petitioner marshals the facts and shows that in light of the record as a whole, the agency's findings are not supported by substantial evidence. *See id.* § 63–46b–16(4)(g); *First Nat'l Bank of Boston,* 799 P.2d at 1165. On the other hand, we grant no such deference to the agency's interpretation or application of law, which we review for correctness.[3] Utah Code Ann. § 63–46b–16(4)(d); *Morton Int'l, Inc. v. Auditing Div.,* 814 P.2d 581, 588 (Utah 1991); *Savage Indus. v. Utah State Tax Comm'n,* 811 P.2d 664, 669–70 (Utah 1991). With these standards in mind, we turn to the merits of this case.

We begin with Hales' first contention—that the Commission erred when it limited the section 59–12–104(18) tax exemption to common carriers. That section reads as follows:

The following sales and uses are exempt from the taxes imposed by this chapter:

. . .;

(18) intrastate movements of freight and express or street railway fares[.]

Utah Code Ann. § 59–12–104(18). Hales argues that the provision's plain language exempting intrastate "movements of freight" is not limited to common carriers but should extend to all transportation costs. We disagree.

▮ In construing a statute, we view it as a comprehensive whole, not as an unrelated collection of provisions. *See Silver v.*

*Auditing Div.,* 820 P.2d 912, 914 (Utah 1991); *Amax Magnesium Corp. v. Utah State Tax Comm'n,* 796 P.2d 1256, 1258 (Utah 1990); *Peay v. Board of Ed. of Provo City Schools,* 14 Utah 2d 63, 66, 377 P.2d 490, 492 (Utah 1962). Applying this principle to the statute before us, we look first to section 59–12–103, which imposes the sales tax from which Hales seeks exemption. This section taxes, *inter alia,* amounts paid to "common carriers" for "all" transportation. Utah Code Ann. § 59–12–103(1)(b). While the section 59–12–104(18) exemption for intrastate transportation of freight does not mention common carriers, it is a logical inference that the legislature imposed the general tax on common carriers in section 59–12–103(1)(b) and then sought to limit its application to *common carriers* in section 59–12–104(18).

Other provisions in the statutes have a similar structure of a general imposition of tax followed by specific limitations. For example, although section 59–12–103 taxes "meals sold," *id.* § 59–12–103(1)(e), section 59–12–104 exempts airline food and certain vending machine food sales from the "meals sold" tax, *id.* § 59–12–104(3), (4). This pattern supports the inference that the legislature intended section 59–12–104(18) to do nothing more than limit the tax specifically imposed on common carriers.

▮ Although we generally construe taxing statutes in favor of the taxpayer and against the taxing authority, we construe statutes providing tax exemptions strictly against the taxpayer. *Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980). We therefore construe section 59–12–104(18) against Hales. Because the construction that limits the exemption to com-

---

why these amounts differ from those initially assessed against Hales by the Auditing Division.

**3.** We recently have indicated that we will grant intermediate deference to an agency's interpretation or application of specific laws when the legislature has explicitly or implicitly delegated discretion to the agency to interpret or apply that law. *See Morton Int'l, Inc. v. Auditing Div.,* 814 P.2d 581, 589 (Utah 1991). Because here there is no explicit delegation of discretion and

because the questions at issue are of general law and specific statutory construction on which the Commission's experience and expertise will be of no real assistance, *see Sandy City v. Salt Lake County,* 827 P.2d 212, 218 (Utah 1992); *Chris & Dick's Lumber v. Tax Comm'n,* 791 P.2d 511, 513–14 (Utah 1990), we do not apply the standard of intermediate deference to the legal issues in this case. *See Zissi,* 842 P.2d at 853; *Morton,* 814 P.2d at 588–89.

mon carriers finds logical support in the structure of the statute, we reject Hales' broader gloss. We hold that section 59–12–104(18)'s sales tax exemption is limited to common carriers. Utah Code Ann. § 59–12–104(18). Because Hales is not a common carrier, it is not entitled to the benefits of the exemption.

We next turn to Hales' contention that even without the exemption, its transportation charges were not subject to sales tax. The provision at issue is section 59–12–103(1)(a), which reads as follows:

(1) There is levied a tax on the purchaser for the amount paid or charged for the following:

(a) retail sales of tangible personal property made within the state[.]

*Id.* § 59–12–103(1)(a). Hales claims that its asphalt, sand, concrete, and gravel sales were completed at its pit or plant and that therefore any transportation charges accrued after the sales were complete. In other words, it argues that title to the merchandise passed at the point of sale instead of at delivery and that it had no obligation to collect and remit sales tax on the transportation charges.

Hales' argument breaks into two subsidiary issues. First, what is the proper legal standard for determining passage of title? Second, applying that standard, is the Commission's finding that Hales did not pass title until delivery correct? We take each question in turn.

■ We begin with the common ground. Both Hales and the Commission agree that passage of title is the moment upon which the transaction is to be valued for the purposes of the tax. The transportation charges are taxable if they are incurred before the transfer of title because this increases the total selling price; transportation charges are not taxable if they are incurred after the passage of title because they are not part of the taxed sales transaction. While the text of the sales tax statute does not mention such a test, *see id.* § 59–12–103, this court has interpreted the predecessor statute as hinging taxabili-

ty on the passage of title.[4] *See Whitehill Sand & Gravel Co. v. State Tax Comm'n,* 106 Utah 469, 472, 150 P.2d 370, 371 (1944); *see also Ford J. Twaits Co. v. Utah State Tax Comm'n,* 106 Utah 343, 348, 148 P.2d 343, 345 (1944). In fact, the Commission has promulgated a rule adopting the passage-of-title test for fixing the moment for determining the tax. *See* Utah Admin.R. 865–19–71S.

While Hales and the Commission agree that passage of title determines the taxability of the transportation charges, they differ as to who has the burden of proving the point of passage. Each contends that *Whitehill* requires the other to prove when title passed. The Commission argues that title passes to the buyer on delivery unless the seller produces evidence to the contrary. Hales insists that *Whitehill* requires the Commission to prove that title passed on delivery by producing evidence in support of its conclusion. Because the Commission did not produce such evidence here, Hales argues, this court should presume that title passed at the point of shipment. We disagree with Hales for two reasons. First, we are unconvinced that *Whitehill* stands for the proposition Hales asserts. Second, even if *Whitehill* did establish a rebuttable presumption that title passes at shipment, Utah's adoption of the Uniform Commercial Code overruled its holding and established a new test for passage of title under which it is clear that Hales passed title to its merchandise at delivery, not before. We discuss these points in turn.

We first address Hales' interpretation of *Whitehill.* In *Whitehill,* the plaintiff showed that in some of the transactions included in a deficiency tax assessment, the parties had contracted explicitly to pass title at point of shipment, before the materials were transported to the customer. 106 Utah at 474–75, 150 P.2d at 372. The court concluded that while the Commission correctly assessed sales tax deficiencies for two transactions where the parties had agreed that title would pass at delivery, *id.*

**4.** The predecessor to the taxation statute differs slightly from that at issue here, but both Hales and the Commission agree that the differences are insignificant.

at 475, 150 P.2d at 372, in the majority of the transactions, the facts were not so clear cut, *id.* at 475, 150 P.2d at 372–73. The court set aside the assessment and remanded for a rehearing on the question of when title passed in those ambiguous transactions. In so doing, it held that the Commission could not infer that title had passed on delivery from the mere fact that invoices listed the pit price plus delivery charge as a single item, with the sales tax applied only to the pit price for the sand or gravel. *Id.* at 475, 150 P.2d at 372.

Notwithstanding this holding, it is important to note that for some of its transactions, the taxpayer in *Whitehill* had adduced evidence of an explicit agreement to pass title at the point of shipment. Consequently, the *Whitehill* court may not have meant that in the absence of *any* evidence as to the parties' intent, it would infer that title passed on shipment. Instead, its refusal to infer that title had passed on delivery may stem solely from the fact that Whitehill had produced some evidence rebutting that presumption. We reject Hales' contention that *Whitehill* prohibits an inference that title passes at shipment.

■ Second, even if *Whitehill* established a rebuttable presumption that title passes on shipment, which we do not think it did, Utah's adoption of the Uniform Commercial Code (the "UCC") overruled *Whitehill*'s holding by creating a new test for determining passage of title. Section 70A–2–401(2) provides:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
>
> (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

> (b) if the contract requires delivery at destination, title passes on tender there.

Utah Code Ann. § 70A–2–401(2). This section establishes a new test in cases where the parties have not "explicitly agreed" when title shall pass. This test hinges the passage of title on whether the contract requires delivery at destination. *Cf. O'Kelley–Eccles Co. v. State,* 160 Cal.App.2d 60, 324 P.2d 683, 686 (1958). Because a purchase agreement will always either specify or not specify delivery at destination, the *Whitehill* presumption is irrelevant. In adopting the UCC, the legislature declared that when a contract requires delivery at destination, title passes at destination unless the parties explicitly agree otherwise. *See* Utah Code Ann. § 70A–2–401(2). This is the test applicable to this case. This is also the test, codified in the Commission's rules, that the Commission applied in determining that Hales did not pass title to its merchandise until delivery. *See* Utah Admin.R. 865–19–71S(B)(1), (3).

■ Having determined that the Commission applied the correct legal test to Hales' case, we next review its finding that Hales did not pass title until delivery. As an initial matter, we note that Hales anticipated our analysis under section 70A–2–401(2) and has argued that its sales contracts did not "require" delivery at destination within the meaning of that section because its customers could elect to collect their orders at the pit or plant. Therefore, it contends, title to its merchandise passed at shipment under section 70A–2–401(2). We disagree. Once a customer elected to have the material delivered rather than picking it up, Hales and the customer had a contract for delivery at destination. *See East Brewton Materials, Inc. v. State Dep't of Revenue,* 45 Ala.App. 584, 233 So.2d 751, 757 (1970); *TOBI Transp., Inc. v. State Bd. of Equalization,* 104 Cal. App.3d 730, 163 Cal.Rptr. 778, 780 (1980); *Santa Clara Sand & Gravel Co. v. State Bd. of Equalization,* 225 Cal.App.2d 676, 37 Cal.Rptr. 506, 508–09 (1964); *O'Kelley–Eccles Co.,* 324 P.2d at 686. Absent an explicit agreement to the contrary, title to Hales' materials passed when Hales ful-

filled its contract and made delivery. *See Santa Clara Sand & Gravel Co.*, 37 Cal. Rptr. at 508–09, 511.

■ As an alternative challenge to the Commission's findings, Hales argues that the transactions in question satisfy the first line of section 70A–2–401(2)—"unless otherwise explicitly provided"—because the purchase orders show an agreement between Hales and its customers to pass title at the point of shipment. As evidence, Hales submitted several purchase orders and invoices showing separate entries for costs of materials and transportation. These separate entries do not prove a bilateral agreement to pass title at shipment instead of delivery, as required by section 70A–2–401(2). Under the UAPA, Hales has the burden of demonstrating that no substantial evidence supports the Commission's finding that no explicit bilateral agreement existed on the subject of title transfer. *See* Utah Code Ann. § 63–46b–16(4)(g); *First Nat'l Bank of Boston*, 799 P.2d at 1165. The invoices and purchase orders it submitted may be firm evidence of Hales' own intent to pass title at point of shipment; however, without more, they do not prove an explicit agreement by the customers to take title at the point of shipment. Because unilateral subjective intent does not prove explicit agreement between the parties to pass title at point of shipment, *see* Utah Code Ann. § 70A–2–401(2); *O'Kelley–Eccles Co.*, 324 P.2d at 686, Hales has failed to marshal the facts to show that the Commission's finding is not supported by substantial evidence. *See First Nat'l Bank of Boston*, 799 P.2d at 1165. Consequently, we affirm the Commission's finding that Hales did not pass title until delivery. Because it did not pass title until delivery, Hales was obligated to collect and remit sales tax on its transportation charges.

In its brief, Hales points to several foreign cases, arguing that other jurisdictions have held that title passes at or before shipment. Hales is correct as to the holdings of these cases; however, they have been rendered in circumstances far different from those in the present case. The court in *Revenue Cabinet v. Corum & Edwards, Inc.*, 673 S.W.2d 736 (Ky.Ct.App. 1984), for example, based its finding that title passed before delivery on the unique nature of ready-mix concrete, which spoils if the customer rejects delivery. Because of ready-mix concrete's short lifespan, industry custom and practice recognize that title passes when the ingredients are mixed. *Id.* at 739. The court explicitly noted that it was basing its determination on the custom of the industry, not on Kentucky's version of section 70A–2–401(2), *id.*, thereby implying that but for the custom of the particular industry, title would have passed at delivery under Kentucky's counterpart to section 70A–2–401(2). This implication bolsters the Commission's position in this case because in *Revenue Cabinet*, as here, the sales tax statute did not impose a test for passage of title, and an administrative rule did impose a test for passage of title. *Id.* at 738–39. Here, Hales makes no claim that the impermanence of its materials results in a generally understood, implicit agreement to pass title at some point before delivery. Moreover, our statute requires an *explicit* agreement on passage of title before the statutory presumption can be rebutted; there is no obvious provision in this statute for an implicit understanding, which the Kentucky court thought sufficient. Consequently, the facts of *Revenue Cabinet* are inapposite and its result is inapplicable to the case at bar.[5] *See also Kurtz Concrete, Inc. v.*

---

5. The other cases Hales cites are equally unconvincing. The court in *Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission*, 252 Iowa 500, 107 N.W.2d 553 (1961), exempted transportation costs from sales tax in a situation totally unlike that before us. There, the statutory exemption for transportation costs was not limited to common carriers, the state did not recognize passage of title as the pivotal fact for determining taxability, the merchandise was perishable ready-mix concrete instead of the comparatively permanent materials at issue in the instant case, and the court found that both the buyer and the seller intended that the contracts for sale and transportation be independent. *Id.* at 556–58. Because of these distinctions, *Clarion* offers little guidance in resolving this case. Similarly, the court in *In re Sales & Use Tax Determination*, 225 N.W.2d 571 (N.D. 1974), held only that incidental but separate

*Spradling,* 560 S.W.2d 858, 862 (Mo.1978) (en banc) (holding that title passes on mixture of ready-mix concrete because of usage of trade).

We hold that the Commission applied the correct legal test in finding that Hales did not pass title until delivery and therefore was required to collect and remit sales taxes on its transportation costs.

We next consider Hales' contention that even if the Commission's order was correct in general, Hales' small-batch charges and sales to JTN should not be subject to sales tax and that the Commission should credit Hales for any taxes it paid on sales to JTN before March 1, 1987. We take the small-batch and JTN issues in turn.

■ The small-batch question can be disposed of quickly. Hales admits that the small-batch charge is, in essence, a transportation charge added to the price of batches of concrete that are too small to absorb the cost of delivery. Under the passage of title analysis outlined above, therefore, small-batch charges are taxable unless the parties explicitly agree otherwise. Hales has produced no evidence of such agreement. The case it cites in support of exempting small-batch charges from taxation is inapposite because it relies on an explicit statutory exemption of all freight charges. *See Maryland Redi–Mix, Inc. v. Comptroller of the Treasury,* Sales Tax No. 246, 1985 WL 6114 (Md.Tax Aug. 2, 1985). Because Utah has no comparable statute or rule, *Maryland Redi–Mix* is of no assistance. *See State v. Anderton,* 69 Utah 53, 63, 252 P. 280, 284 (1926).

■ Similarly unconvincing is Hales' contention that transfers of materials to JTN should not be taxable. Hales paid taxes on sales to JTN before March 1, 1987, but now seeks reimbursement of those payments and a tax exemption for later payments because, it says, the two corporations are the same entity for tax purposes. Hales bases its argument on the fact that the Utah Department of Transportation, as instructed by the United States Department of Labor, found that JTN and Hales should be considered a single construction subcontractor for the purposes of setting the salaries of employees performing federal contracts as required by the Davis–Bacon Act. *See* 40 U.S.C. §§ 276a to 276a–5. Because the Utah Department of Transportation considers Hales and JTN to be a single entity for purposes of federal contracts, Hales argues, this court should estop the State of Utah from assessing sales tax against Hales for sales to JTN.

This position lacks support from either state or federal law. First, we have never held that one agency's determination is binding on the deliberations of another agency. In fact, under the UAPA, an agency's determinations are not even binding on that agency itself, so long as the agency justifies its departure from prior practice by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency. *See* Utah Code Ann. § 63–46b–16(4)(h)(iii); *see also BJ–Titan Servs. v. State Tax Comm'n,* 842 P.2d 822, 831 (Utah 1992). As the Commission points out in its brief, "If an administrative body is not bound by its own prior determinations, that agency certainly should not be constrained by the determinations of a different agency."

■ Second, federal labor law criteria are simply irrelevant to a determination of state taxability.[6] As this court stated in

---

bargaining for transportation costs implies an agreement to pass title at the point of shipment. *Id.* at 574, 576, 578. Because Hales has adduced no evidence of separate bargaining for transportation costs, *In re Sales* does not aid its argument.

6. Although we make no ruling on this issue, federal labor law criteria probably are also irrelevant to a determination of *federal* taxability. In concluding that JTN and Hales should be treated as one entity because of their shared

equipment, facilities, records, management, and employees, the Department of Labor took pains to emphasize that the factors relevant to its determination were completely independent of those "that may be of paramount importance to other governmental agencies, *such as the Internal Revenue Service....*" Letter from Arthur M. Kerschner, Jr., Employment Standards Admin., U.S. Dep't of Labor, to E. Jane Casper, Construction Div., Utah Dep't of Transp. (Aug 3, 1989) (emphasis added).

1964, "[T]he impact of federal requirements on the operations of plaintiff do not affect Utah's power to tax sales of services and property where title and delivery pass[ ] within the state." *Ogden Union Ry. & Depot Co. v. State Tax Comm'n*, 16 Utah 2d 23, 28, 395 P.2d 57, 61 (Utah 1964).

Third, the Davis–Bacon·Act protects employees, not their employers. "As a basic proposition, it is settled that contractors can claim no legal rights growing solely out of Davis–Bacon Act minimum wage determinations by the Secretary of Labor, for such provisions are not incorporated in the contract for their benefit." *Morrison–Hardeman–Perine–Leavell v. United States*, 183 Ct.Cl. 938, 392 F.2d 988, 995 (1968). Because Hales' position seems to lack any legal basis, we affirm both the Commission's refusal to reimburse Hales for tax paid on transactions with JTN before March 1, 1987, and the Commission's deficiency assessment against Hales for JTN transactions after March 1, 1987.

■ The final issue is whether Hales should be liable for a 10–percent negligence penalty for failing to collect and remit taxes on its sales since March 1, 1987. *See* Utah Code Ann. §§ 59–1–401(3)(a), –12–110(5). A 10–percent negligence penalty is appropriate when the taxpayer has failed to pay taxes and a reasonable investigation into the applicable rules and statutes would have revealed that the taxes were due. A 15–percent penalty for intentional disregard of the law is imposed when the taxpayer has failed to pay taxes, a reasonable investigation into the applicable rules and statutes would have revealed that the taxes were due, and the Commission has informed the taxpayer that the taxes were due. *See id.* § 59–1–401(3)(b); *Chicago Bridge & Iron Co. v. State Tax Comm'n*, 839 P.2d 303, 309 (1992). In both instances, the taxpayer can escape the penalty if he or she can show that he or she based the nonpayment of taxes on a legitimate, good faith interpretation of an arguable point of law. *Cf. Chicago Bridge & Iron Co.*, 839 P.2d at 309.

Applying this standard to the facts before us, we find that Hales should not be subject to the negligence penalty because it based its nonpayment of taxes on a legitimate, good faith interpretation of an arguable point of law. Hales advanced two primary reasons for its nonpayment of taxes. First, it argued that its transportation charges were exempt from sales tax; second, it argued that title to its merchandise passed at the point of shipment and that therefore transportation costs were not part of the price of the sale. Although we find that Hales' reliance on the second ground was neither reasonable nor legitimate,[7] we do recognize that the statute listing the sales tax exemptions presented a potential ambiguity as to the scope of the exemption for intrastate movements of freight, which may have misled Hales. *See* Utah Code Ann. § 59–12–104(18) (1987) (amended 1991) (current version at § 59–12–104(17)). The Commission recognized as much in its hearing memorandum. Because of the existence of this ambiguity, we reverse the $9,712 negligence penalty assessed against Hales.

Affirmed in part, reversed in part.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

■

---

7. The law extant in March of 1987, the month Hales stopped collecting and remitting sales taxes, made clear that taxation of transportation charges depended on passage of title, *see Whitehill*, 106 Utah at 472, 150 P.2d at 371, and that absent an explicit agreement to the contrary, title passed on delivery, *see* Utah Code Ann. § 70A–2–401(2). Moreover, the first edition of the Utah Administrative Code, which went into effect July 1, 1987—only five months after Hales stopped collecting and remitting taxes—not only presented the Commission's rules for passage of title, but also provided examples of how those rules would be applied. *See* Utah Admin.R. 865–72S–1 (1987–88).