1999 UT App 231

**ACTION TV, et al., Petitioner,**

v.

**COUNTY BOARD OF EQUALIZATION OF SALT LAKE COUNTY, Respondent.**

No. 981253–CA.

Court of Appeals of Utah.

July 29, 1999.

Mark K. Buchi, Gary R. Thorup, and Steven P. Young, Holme Roberts & Owen LLP, Salt Lake City, for Petitioner.

Mary Ellen Sloan and Michelle Bush, Asst. Atty. Gen., Salt Lake City, for Respondent.

Before BILLINGS, DAVIS, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Action TV seeks review of a final decision of the Utah State Tax Commission concluding, first, that Action TV's rent-to-own personal property, unreported on its personal property affidavits for the tax years 1989 through 1995, is "escaped property" subject to a five-year retroactive assessment and, second, that the fair market value of its rent-to-own personal property was properly estimated. We decline to disturb the Commission's decision.

## BACKGROUND

¶ 2 Action TV engages in a rent-to-own business at three separate Utah locations, offering furniture, appliances, and electronics to customers under rent-to-own contracts. Under these contracts, Action TV customers receive possession of goods, typically for a rental period of twelve to twenty-one months. If a customer faithfully makes payments as required by the contract, at the end of the contract period he or she will own the goods. Prior to that time, however, title to the property remains with Action TV. If the customer elects to discontinue renting the goods, he or she may return them at any time before the expiration of the contract with—in the words of Action TV—"no further obligation." In such an event, Action TV either rents the goods to another customer, sells them outright, "junks" them, or donates them to charity.

¶ 3 For as long as it has been in business, Action TV has timely filed all required tax reports and returns. Nevertheless, for at least fourteen years, Action TV has failed to include in its annual personal property affidavits any personal property subject to rent-to-own contracts. Action TV's omission was originally based on its belief that property in the possession of a rental customer was tax-exempt as inventory held for sale in the ordinary course of business.

¶ 4 In May 1994, the Salt Lake County Assessor audited Action TV for the six years from 1989 to 1994 and assessed property taxes on rent-to-own property not reported in Action TV's personal property affidavits during those years. A subsequent current-year assessment was issued for 1995. The Assessor sought to tax Action TV for all personal property held by its rental customers under rent-to-own contracts on January 1 of each relevant tax year.

¶ 5 The tax assessments were calculated using the cost approach, an estimate of fair market value based on the wholesale cost Action TV paid to acquire the goods multiplied by a depreciation factor reflecting the useful economic life of the property. The Assessor relied on the Tax Commission's 1994 Recommended Schedules for Personal Property Valuation and depreciated Action TV's rent-to-own personal property according to the schedule for Class 3, five-year class life property. Class 3 was selected based on the Assessor's judgment of the useful economic life of the property. In 1994, the audit year, the Commission's Recommended Personal Property Valuation Schedules defined Class 3 personal property as "Short Life Trade Fixtures," "generally consist[ing] of electronic types of equipment, includ[ing] property subject to rapid functional and economic obsolescence or severe wear and tear." The most pertinent example of Class 3 property given in the schedules was "Small Equipment Rentals."

¶ 6 Action TV first appealed all three tax assessments to the Salt Lake County Board of Equalization. The Board affirmed the assessments, and Action TV appealed to the Utah State Tax Commission. The Commission issued its Findings of Fact, Conclusions of Law, and Final Decision on January 14, 1998, rejecting Action TV's arguments.

¶ 7 The Commission concluded that rent-to-own property in the possession of Action TV's customers was not exempt from taxation as inventory. The Commission determined that the items of personal property omitted from Action TV's property tax affidavits from 1989 to 1995 qualified as escaped property under Utah law. The Commission also found that the Assessor properly valued the escaped property as Class 3, five-year class life property according to the Commission's Recommended Schedules for Personal Property Valuation. Neither the Board nor the Commission concluded that Action TV

acted in bad faith or with intent to avoid its tax obligations.

¶ 8 Action TV petitioned the Utah Supreme Court for review of the Commission's decision. As permitted by Utah Code Ann. § 78–2a–3(2)(j) (1996), the Supreme Court transferred the case to this court for resolution.

## ISSUES AND STANDARD OF REVIEW

¶ 9 Action TV presents two issues for our review. First, Action TV argues it is improper to apply the escaped property provisions, Utah Code Ann. §§ 59–2–102(8), –309(1) (1996 & Supp.1998), to impose taxes on rent-to-own personal property omitted from its personal property affidavits from 1989 through 1995. Second, Action TV challenges the Commission's determination that the Assessor properly calculated the tax on Action TV's rent-to-own personal property by applying the Class 3, five-year class life depreciation schedule in accordance with the Commission's 1994 Recommended Personal Property Valuation Schedules.[1]

¶ 10 The standard we apply "when reviewing formal adjudicative proceedings commenced before the commission" is governed by statute:

> [T]he Court of Appeals ... shall ... grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review[, but shall] grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.

Utah Code Ann. § 59–1–610(1) (1996).

■ ¶ 11 "Whether property has escaped assessment is a legal question[.]" *First Sec. Mortgage Co. v. Salt Lake County,* 866 P.2d 1250, 1251 (Utah Ct.App.1993). *Accord County Bd. of Equalization v. State Tax Comm'n ex rel. Sunkist Serv. Co.,* 789 P.2d

291, 292 (Utah 1990); *County Bd. of Equalization v. Nupetco Assocs.,* 779 P.2d 1138, 1139 (Utah 1989). Further, the statutory sections dealing with "escaped property," Utah Code Ann. §§ 59–2–102(8), –217, –309 (1996 & Supp.1998), contain no explicit grant of legislative discretion to the Commission. Thus, in accordance with section 59–1–610, we grant no deference to the Commission's conclusion that the rent-to-own property at issue is escaped property but review it under a correction of error standard. *See id.* § 59–1–610(1)(b).

¶ 12 In contrast, the Commission's findings about the fair market value of Action TV's rent-to-own property present questions of fact. *See Alta Pac. Assocs. v. Utah State Tax Comm'n,* 931 P.2d 103, 109 (Utah 1997). The Commission is entitled to deference on this issue "and [we] will overturn [its findings of fact] only if the petitioner marshals the [evidence] and shows that in light of the record as a whole, the [Commission's] findings are not supported by substantial evidence." *Hales Sand & Gravel, Inc. v. Audit Div.,* 842 P.2d 887, 890 (Utah 1992). *See* Utah Code Ann. § 59–1–610(1)(a) (1996).

## I. CLASSIFICATION OF ACTION TV'S RENT–TO–OWN PROPERTY AS ESCAPED PROPERTY

¶ 13 Action TV challenges the Commission's conclusion that its rent-to-own personal property is escaped property subject to the five-year retroactive assessment permitted by Utah law. "Escaped property" is defined as

> any property, whether personal, land, or any improvements to the property, subject to taxation and is:
>
> . . .
>
> (ii) undervalued or omitted from the tax rolls because of the failure of the taxpayer to comply with the reporting requirements of this chapter.....

Utah Code Ann. § 59–2–102(8)(a)(ii) (Supp. 1998).[2] County assessors have discretionary

---

1. The Commission's 1994 Recommended Personal Property Valuation Schedules, with some minor changes, were eventually promulgated as actual rules, becoming effective February 13,

1995. *See* Utah Code Admin. P. R884–24P–33(C)(2) (1995).

2. As a convenience to the reader, and because the provisions in effect at the relevant times do

authority to assess escaped property "at any time as far back as five years prior to the time of discovery." *Id.* § 59–2–309(1) (1996). *Accord id.* § 59–2–217 (1996).

¶ 14 Action TV's position has two facets.[3] First, Action TV argues that its property, even if "subject to taxation," does not qualify as escaped property because it was not "omitted from the tax rolls because of the *failure* of the taxpayer to comply with the reporting requirements." Utah Code Ann. § 59–2–102(8)(a)(ii) (Supp.1998) (emphasis added). Rather, it contends that it could not "fail" to comply with the reporting requirements of the Property Tax Act where the information available from the Commission concerning taxation of rent-to-own property was unclear and inconsistent. Second, Action TV argues that, inasmuch as it endeavored in good faith to comply with the requirements of the Property Tax Act, it would be unfair to retroactively subject it to an escaped property assessment.

¶ 15 Action TV based its nonpayment of taxes on its interpretation of the tax exemption for inventory. That exemption provides: "Tangible personal property present in Utah on the assessment date, at noon, held for sale in the ordinary course of business or for shipping to a final out-of-state destination within 12 months and which constitutes the inventory of any retailer ... is exempt from property taxation." Utah Code Ann. § 59–2–1114(1) (Supp.1998). *Accord* Utah Const. art. XIII, § 2(4). Under Utah Code Ann. § 59–2–1114(3)(b) (Supp.1998), " '[i]nventory' means all items of tangible personal property described as materials, containers, goods in

process, finished goods, severed minerals, and other personal property owned by or in the possession of the person claiming the exemption." Focusing on one part of the statute's definition of inventory—"personal property *owned by* or in the possession of the person claiming the exemption"—Action TV concluded its rent-to-own personal property, which it unquestionably owned though it did not possess, was exempt inventory because the rented goods would eventually become sold in the ordinary course of Action TV's business if the renter fully performed the rental agreement. However, Action TV's theory ignored the more important questions of whether it could fairly be regarded as a "retailer" and whether eventual transfers of title at the conclusion of a long rental arrangement could fairly be regarded as a "sale in the ordinary course of business." Utah Code Ann. § 59–2–1114(1) (Supp.1998).

¶ 16 According to the record before us, the Commission first clearly indicated the inventory exemption did not apply to rent-to-own property in its 1994 Recommended Schedules for Personal Property Valuation. Even after the recommendation became a rule in 1995, it continued to refer to a possible exemption for rent-to-own property through 1996.[4] *Compare* Utah Code Admin. P. R884–24P–33(C)(3) (1996) ("Property held for rent or lease is taxable, and is not exempt as inventory. Entities engaged in ... rent-to-own may establish an exemption for inventory by filing form TC–595[.]") *with id.* R884–24P–33(C)(3) (Supp.1997) ("Property held for rent or lease is taxable and is not exempt as

---

not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion, unless otherwise noted.

**3.** Action TV does not now directly challenge the Commission's ruling that Action TV's rent-to-own personal property was not exempt from taxation as inventory under Article XIII, section 2(4) of the Utah Constitution and Utah Code Ann. § 59–2–1114(1) (Supp.1998).

**4.** Although Action TV directs our attention to this inconsistency in the Commission's regulations, it has not argued in the case before us, with the exception of one response to a question posed at oral argument, that the Commission should be constrained to apply its "change" in the rules only prospectively. In circumstances similar to

the instant case, the Commission has elected to apply its decision only prospectively. *See 49th Street Galleria v. Tax Comm'n,* 860 P.2d 996, 998 n. 4 (Utah Ct.App.1993) ("Because of the conflicting advice provided by the Auditing Division, the Tax Commission held that the Galleria would not be liable for the tax due on the roller skating and batting cage receipts during the period of the audit, but only prospectively."), *cert. denied,* 878 P.2d 1154 (Utah 1994). The Commission did not elect to do so here. Nor, apparently, did Action TV request such relief before the Commission. We therefore do not consider whether it would be appropriate to require only prospective application of the changes in the Commission's rules defining the tax status of rent-to-own property.

inventory. For entities primarily engaged in rent-to-own, inventory on hand at January 1 is exempt and property out on rent-to-own contracts is taxable.").[5] Action TV presented evidence to the Commission indicating confusion was widespread in the rent-to-own industry concerning the taxation of personal property under rent-to-own contracts. Indeed, the Commission specifically found that "[d]uring the period in question rent-to-own businesses did not uniformly report or value items of personal property on their personal property affidavits."

¶ 17 For purposes of our decision, we assume the uncertainty and confusion was as pervasive as Action TV would have us believe. Nevertheless, we reject Action TV's argument that its rent-to-own property cannot be "escaped property" because Action TV had no way of knowing the property was assessable, and therefore could not have *failed* to report it. First, Action TV places undue emphasis on "fail" as used in the escaped property provision. We do not read the provision as requiring some level of culpability. Our Legislature, while providing that innocent underpayment of taxes could not be the basis for assessing a penalty, *see* Utah Code Ann. § 59–1–401(5)(a) (1996), has, for obvious reasons, not seen fit to condition tax liability on a subjective realization that a tax was actually due.

¶ 18 Further, we find implausible Action TV's theory that goods it rented and which were in customers' homes were inventory it "held for sale in the ordinary course of business" as a "retailer." Utah Code Ann. § 59–2–1114(1) (Supp.1998). Although Action TV may sell previously rented goods if they are returned or repossessed before the contract is fulfilled, goods cannot be sold to ordinary retail shoppers while in the homes of rental customers pursuant to rent-to-own contracts.

¶ 19 Finally, the Utah Supreme Court has held that, while a "negligence penalty is appropriate when ... a reasonable investiga-tion into the applicable rules and statutes would have revealed ... the taxes were due," *Hales Sand & Gravel, Inc. v. Audit Div.,* 842 P.2d 887, 895 (Utah 1992), taxpayers can escape *penalties* if they "can show that [they] based the nonpayment of taxes on a legitimate, good faith interpretation of an arguable point of law." *Id.* Of course, the converse is also true: when a reasonable investigation into the applicable rules and statutes *would not* have revealed taxes were due, the taxpayer may avoid the negligence penalty—but in each instance the taxpayer remains responsible to pay an escaped tax assessment if it is levied. Though the Commission's rules did not explicitly inform Action TV that the inventory exemption was inapplicable to its rent-to-own property until 1994, the audit year, Action TV nevertheless must pay the escaped property assessment.

¶ 20 Action TV further argues that, even if its rent-to-own property is "escaped property" under section 59–2–102(8), it is unfair and improper to apply the provision retroactively because Action TV endeavored in good faith to comply with applicable tax laws and guidelines. Again, Action TV's good faith would be relevant if the Commission had assessed a penalty in addition to the escaped property assessment. But a good-faith mistake in relying on the inventory exemption does not preclude imposition of the basic escaped property assessment.

¶ 21 The Utah Supreme Court addressed similar circumstances in *Hales Sand & Gravel.* The Court noted that the statute at issue there "listing the sales tax exemptions presented a potential ambiguity as to the scope of the exemption for intrastate movements of freight, which may have misled Hales." 842 P.2d at 895. Hales's "nonpayment of taxes [was therefore based] on a legitimate, good faith interpretation of an arguable point of law." *Id.* But note the relief to which Hales was therefore entitled: the Court reversed the negligence penalty assessed against

---

5. The Supreme Court has held that "an agency may not take actions which ' "conflict with [the] design of an Act, and when they do the court has a duty to invalidate them." ' " *Airport Hilton Ventures, Ltd. v. Utah State Tax Comm'n,* 976 P.2d 1197, 1200 (Utah 1999) (citations omitted) (invalidating regulation assessing sales and tran-sient room tax beyond scope of authorizing statute). Action TV, however, has not argued the Commission exceeded its authority when it promulgated the rule precluding rent-to-own establishments from claiming the statutory inventory exemption with respect to "property out on rent-to-own contracts."

Hales, while affirming the sales tax deficiency assessment. *See id. Cf. Broadcast Int'l, Inc. v. Utah State Tax Comm'n*, 882 P.2d 691, 696–98, 700–01 (Utah Ct.App.1994) (upholding penalty where interpretation of tax exemption for property purchased for resale was plausible but was not "the basis for a carefully considered decision that no tax was owed").

¶ 22 Similarly, in this case the Tax Commission accepted that Action TV based its nonpayment of taxes on a legitimate, good faith interpretation of the statutory language found in section 59–2–1114 exempting inventory held for sale in the ordinary course of business from tax liability. The Commission accordingly did not impose the negligence penalty. While Action TV's good faith reliance on a plausible interpretation of the application of the statute might be persuasive if Action TV were challenging the imposition of a negligence penalty, that is not the issue before us. Action TV has not shown how, under existing law, its reliance on an arguable point of law could do more than preclude the assessment of a penalty against it. Action TV's reliance does not excuse its responsibility to pay taxes on its escaped property.

## II. VALUATION OF RENT-TO–OWN PROPERTY

¶ 23 We now consider Action TV's argument that the Commission erred in upholding the Assessor's use of the Commission's Class 3, five-year class life depreciation schedule to estimate the fair market value of Action TV's rent-to-own personal property. The Utah Constitution requires all tangible property in the state to be assessed "according to its value in money." Utah Const. art. XIII, § 3. The Legislature implemented this constitutional provision by requiring "[a]ll tangible property [to] be assessed and taxed at a uniform and equal rate on the basis of its fair market value." Utah Code Ann. § 59–2–103(1) (1996). "Fair market value" is "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." *Id.* § 59–2–102(9) (Supp.1998).

¶ 24 Because individual appraisal of every item of taxable personal property is not feasible, the Commission has established personal property valuation schedules to estimate the fair market value of personal property for tax purposes. The schedules employ the cost approach, which estimates fair market value by depreciating the wholesale or retail value of personal property according to an applicable class life schedule. Class life schedules are tables prescribing the rate at which personal property should be depreciated over time based on an estimate of the property's useful economic life.

¶ 25 The Assessor used this approach to estimate the fair market value of Action TV's taxable rent-to-own personal property. The Assessor referred to Action TV's books to ascertain the wholesale value of all items of personal property owned by Action TV and under rent-to-own contracts on January 1 of each relevant tax year. He then depreciated the wholesale value according to the Commission's Class 3, five-year class life schedule, recommended for "short life trade fixtures" "subject to rapid functional and economic obsolescence or severe wear and tear," such as small equipment rentals.[6] Utah Code Admin. P. R884–24P–33(C)(2) (1995). This calculation resulted in an estimated fair market value reflecting both the property's original cost and its expected useful economic life.

¶ 26 The Commission affirmed the Assessor's application of the Class 3, five-year class life schedule.[7] It appears the Commission considered the five-year class life appropriate in part because it took into account both the two to three years during which Action TV held title to the property and a reasonable time thereafter during which the

---

6. When the schedules found their way into Commission rules in 1995, however, small equipment rentals were no longer mentioned in the examples of Class 3 Short Life Trade Fixtures. *See* Utah Code Admin. P. R884–24P–33(C)(2) (1995).

7. The schedule provided for rates of depreciation beginning with 84% the first year, 68% the second year, 51% the third year, 35% the fourth year, and 18% the fifth year.

property ordinarily continued to be used in the homes of former customers. It further appears the Commission believed the five-year class life adequately reflected the shortened useful economic life caused by unusual wear and tear common in rent-to-own property.[8]

¶ 27 The Commission found that while Action TV "generally disposed of the items at issue within three years of acquiring them, either through one or more rent to own contracts, outright sales, or as a write off due to theft or poor condition," Action TV's "[l]essee/customers ... usually intended to keep the items for which they entered into the rent-to-own contracts and they continued to use these items after they acquired title from [Action TV]." Based on these findings, the Commission concluded, "[t]he subject property is properly valued as having a five year life by following the Recommended Schedules For Personal Property Valuation promulgated by the Utah State Tax Commission."

¶ 28 Action TV challenges the Assessor's application of the Class 3, five-year class life depreciation schedule, arguing it overvalues Action TV's rent-to-own personal property. Action TV asserts its rent-to-own personal property has only an eighteen-to twenty-four-month useful economic life—not the sixty-month life used by the Commission's valuation table. Action TV's witnesses testified, however, that they estimated the useful economic life of the property based only on the average length of time during which the

property could be economically sold or rented by Action TV. Eighteen to twenty-four months, therefore, reflected only the useful economic life of the property to Action TV, not its fair market value. Action TV's estimates did not include any continued useful economic life to Action TV's successful rental customers.

■ ¶ 29 The crux of Action TV's challenge is its belief that in estimating useful economic life, it is improper to consider the period of time *after* title to rent-to-own property has passed to the customer.[9] Thus, Action TV argued for a valuation based on a three-year depreciation schedule. The Commission's Decision and Order expressly states it addressed the question of whether "value [should] be based on a three year or a five year class life." While the Commission's findings in this respect are not a model of detailed clarity, they adequately support the Commission's conclusion that a five-year, rather than a three-year, class life was "the proper valuation method for the subject property."

■ ¶ 30 Action TV claims application of a class life longer than three years is error because the Commission expressly found that Action TV "disposed" of its rent-to-own property within three years.[10] Action TV argues that the Commission, in selecting a useful economic life longer than three years, impermissibly taxed Action TV on property it no longer owned and that had become tax-ex-

---

8.  The Commission's schedules assign a much longer useful economic life to some of the items Action rents and sells. Furniture, for instance, is listed in the Commission's schedules as Class 5 property, with a nine-year class life. *See* Utah Code Admin. P. R884–24P–33(C)(4) (1995).

9.  The Commission found title to Action TV's property generally passed to a customer within three years, and, after title passed, much of the property continued to be used in the homes of former customers. *Action TV presented evidence that its rent-to-own property sometimes had absolutely no economic value at the end of eighteen months to two years. Some of the property showed severe wear and tear and consequently was junked or donated to charity. Other property was stolen, for example, when customers moved and took rent-to-own items with them. Accordingly, the Commission found*

one of the ways Action TV "disposed" of its property was "as a write off due to theft or poor condition." However, the evidence showed only about 2% of Action TV's property suffered such a fate, while 65% of Action TV's rent-to-own customers fulfilled their rent-to-own contracts and became the owners of the property they had rented.

10.  The hearing officer who heard Action TV's appeal of the 1995 current-year tax assessment recommended to the Board of Equalization that Action TV's rent-to-own personal property be valued as Class 1, three-year class life property. According to the Commission's 1994 schedules, Class 1, "Short Life Property," depreciates at the rate of 70% the first year, 41% the second year, and 10% the third year. The Board rejected the hearing officer's recommendation and adopted the five-year depreciation method.

empt residential property in the homes of former customers. Action TV is correct that its rent-to-own property becomes residential property when title passes to a residential customer, and neither Action TV nor its former customer can then be required to pay taxes on that property. *See* Utah Code Ann. § 59–2–1113 (1996) ("Household furnishings, furniture, and equipment used exclusively by the owner at the owner's place of abode in maintaining a home for the owner and the owner's family are exempt from property taxation."). Action TV, however, misconstrues the role of estimated useful economic life in the fair market value calculation.

 ¶ 31 Action TV was assessed taxes only on rent-to-own personal property under rent-to-own contracts on January 1 of each of the tax years at issue. It was not taxed on available property not yet rented, or, if already rented and repossessed, not yet sold or otherwise disposed of, which the Commission regarded as inventory. Nor was Action TV taxed on personal property that, by the assessment date, had become the property of a customer. The continued useful life of the property in the homes of Action TV's former customers was considered solely for its impact on the estimated fair market value of the property while owned by Action TV. The statutory definition of "fair market value" establishes an objective test. *See id.* § 59–2–102(9) (Supp.1998). The Assessor was required to estimate the fair market value of Action TV's property in the abstract, not the value of the property from Action TV's unique business perspective. Thus, although the Commission's five-year class life schedule's estimate of the useful economic life of Action TV's property took into account a period of time after title would pass to the former renter, it did not result in a tax on property no longer owned by Action TV.

¶ 32 The Commission's acceptance of the five-year class life is supported by substantial evidence. Accordingly, we reject Action TV's assertion that use of the Class 3, five-year class life depreciation table overvalued its property. We therefore do not disturb the Commission's rulings in this regard.

## CONCLUSION

¶ 33 We see no error in the Commission's conclusion that Action TV's rent-to-own personal property was escaped property subject to a five-year retroactive tax assessment. We also see no error in the Commission's finding that the fair market value of Action TV's rent-to-own personal property was appropriately determined using the cost approach depreciated according to the Commission's Class 3, five-year class life schedule. Accordingly, we have no occasion to disturb the Tax Commission's order.

¶ 34 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.