**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

In the Matter of the Marriage of:

MATTHEW FLAX,

               Respondent,

       v.

HAO DING,

               Appellant.

No. 83180-1-I

DIVISION ONE

ORDER WITHDRAWING
OPINION AND
SUBSTITUTING OPINION

The opinion for this case was filed on August 1, 2022. A majority of the panel requests that the opinion filed on August 1, 2022 be withdrawn and a substitute unpublished opinion be filed. Now therefore, it is hereby

ORDERED that the opinion filed on August 1, 2022 is withdrawn and a substitute unpublished opinion shall be filed.

FOR THE COURT:

_____
Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 83180-1-I |
| | ) | |
| MATTHEW FLAX, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| HAO DING, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Hao Ding appeals from a denial of his "Petition to Modify Child Support Order," arguing the court abused its discretion. Because Ding fails to demonstrate that the trial court based its decision on untenable grounds or for untenable reasons, we affirm.

FACTS

Matthew Flax and Hao Ding[1] were married in 2014 and separated in January, 2019. They have two dependent children, I.D.-F. and E.D.-F. Their divorce was finalized in March 2020; the court entered several orders, including "Findings and Conclusions about a Marriage," a "Child Support Order," a

---

[1] The captions of the pleadings from the trial court consistently refer to the appellant as Hao Ding, but throughout the record as a whole he is alternately referred to as Hao and Richard.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

"Parenting Plan,"[2] and "Child Support Worksheets" calculating the income of both parents. Ding's income was imputed after the court found he was voluntarily unemployed. The court further found that Ding receives support from his "very wealthy parents" who "pay for his housing and living expenses," and therefore "he does not work because he does not have to work: his parents support him."[3] The child support order required that Ding pay Flax each month, setting Ding as the obligor and Flax as the obligee. However, the monthly transfer payment was deviated to zero dollars because the children "spend significant time with the parent who owes support" and Flax's household was still able to meet the children's basic needs without a monthly support payment from Ding.

A flurry of litigation followed. At issue here is Ding's "Petition to Modify Child Support Order," which he filed on April 14, 2021. Therein, he asserted that a substantial change of circumstances entitled him to a revision, citing a "[c]hange in employment after extreme difficulty finding work and severe financial circumstances." At the hearing on this petition, Flax was represented by counsel while Ding appeared pro se. The commissioner dismissed Ding's petition and awarded attorney fees to Flax. Ding obtained counsel and timely appealed.

---

[2] Ding requests review of the "Order of Child Support," but the 30-day timeframe for appeal set out in RAP 5.2(a) has long since passed. Thus, the panel will not consider that order.

[3] The court also noted that Ding had only "reluctantly provided his recent financial statements" and expressly found his testimony that he was "unable to find a job because of his lack of English proficiency not credible."

ANALYSIS

I.    Substantial Change in Circumstances

Ding first argues the court erred in denying his request for a modification of the support order based on his failure to establish a substantial change of circumstances. He specifically sought an award of child support from Flax and to modify the proportional allocation of day care, educational, and "other" expenses for the children, as well as tax issues. "A trial court's decision whether there has been a substantial change in circumstances must not be reversed by the reviewing court absent a manifest abuse of discretion." Leslie v. Verhey, 90 Wn. App. 796, 802, 954 P.2d 330 (1998). If the court's decision is manifestly unreasonable or based on untenable grounds or reasons, it abuses its discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46–47, 940 P.2d 1362 (1997). We review findings of fact "'under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" DeVogel v. Padilla, 22 Wn. App. 2d 39, 48, 509 P.3d 832 (2022) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). We do not weigh evidence or determine witness credibility. Id. (quoting Greene v. Greene, 97 Wn. App. 708, 714, 986 P.2d 114 (1999)).

The party seeking modification of a child support order "bears the burden of showing a substantial change in circumstances since the entry of the dissolution decree." Leslie, 90 Wn. App. at 802. "The change of circumstances must have been uncontemplated at the time the decree was entered" because the superior court's "[c]ontinuing jurisdiction" over the parties "is not a license to relitigate settled

- 3 -

matters without the requisite showing of changed circumstances." In re Marriage of Arvey, 77 Wn. App. 817, 820, 894 P.2d 1346 (1995); Burch v. Burch, 81 Wn. App. 756, 762, 916 P.2d 443 (1996). A fluctuation in income alone is not necessarily sufficient to find a substantial change in circumstances: "[w]here the obligor has other means of paying [their] child support obligation, the trial court has the discretion to enforce the obligation even in the face of a total lack of income." In re Marriage of Blickenstaff, 71 Wn. App. 489, 498, 859 P.2d 646 (1993).

Ding alleges the superior court failed to conduct "an independent inquiry or investigation" into Ding's current financial circumstances. He contends the shift in his employment history, income, and his parents' financial circumstances constituted a substantial change in circumstances since the final orders were entered pursuant to the dissolution. He states that his parents, who previously supported Ding financially, are now "fighting to save a failing business, desperately seeking repayment of my loans from them." He further argues that the court should not have considered his parents' financial resources, suggesting the court imposed an obligation on them to provide for Ding and Flax's children. This is not what occurred.

In its March 18, 2020 order awarding child support to Flax, the court specifically found "Ding has very wealthy parents who support him. They pay for his housing and living expenses" and therefore "Ding's home clearly has more resources than Flax's home." Further, the court found "Ding is not working" and "his testimony that he is unable to find a job because of his lack of English proficiency not credible. It appears that he does not work because he does not

have to work: his parents support him." This order was not appealed within 30 days; therefore, these findings are now verities. See In re Custody of A.T., 11 Wn. App. 2d 156, 163, 451 P.3d 1132 (2019) (unchallenged findings of fact are verities on appeal); see also RAP 5.2(a) (notice of appeal must be filed in the trial court no later than "30 days after the entry of the decision of the trial court"). The court also deviated from the standard child support calculation because the children "spend significant time with the parent who owes support" and set Ding's child support obligation to zero dollars.

Following the dissolution proceedings, the court expressly found that Ding's parents were supporting him, specifically providing for housing and living expenses and that, as a result, Ding's home had more resources than Flax's.[4] Under Blickenstaff, the court was able to consider these other resources available to Ding with regard to any support obligation. See 71 Wn. App. at 498. As the petitioner in the current action, it was Ding's burden to provide proof of substantial change in circumstances, including the unavailability of those other resources, such that he was no longer able to meet the current support obligation. While much of his briefing focuses on the court's failure to conduct proper review of the parties' respective finances, this was because Ding did not satisfy his initial burden to

---

[4] In briefing, Ding urges "any finding as to Ding's parent's [sic] financial resources should be considered dicta," but this position fundamentally misunderstands the purpose of findings by a trial court. Dicta, the plural of dictum, is "[a]n opinion by a court on a question that is directly involved, briefed, and argued by counsel . . . but that is not essential to the decision and therefore not binding even if it may later be accorded some weight." Judicial Dictum, BLACK'S LAW DICTIONARY (11th ed. 2019).

These findings are not dicta, but facts. In light of the absence of any appeal by Ding to challenge them, they are now facts which we must accept as verities on appeal. The suggestion that they are dicta flies in the face of decades of case law and is not well taken. See, e.g., In re Marriage of Bresnahan, 21 Wn. App. 2d 385, 407, 505 P.3d 1218 (2022); Mueller v. Wells, 185 Wn.2d 1, 9, 367 P.3d 580 (2016); York v. Cooper, 60 Wn.2d 283, 285, 373 P.2d 493 (1962).

demonstrate a substantial change in circumstances to justify such an inquiry, particularly with regard to this additional resource the dissolution court expressly found was available to him.[5]

In ruling on the modification petition, the court also found Ding "presents no authority" to support his request to shift his status from obligor to obligee parent as "the parenting plan has not been modified." The court further found there was "[n]o explanation" for Ding's change in circumstances from the imputed income in March 2020. While Ding submitted some proof of his earnings, he provided no evidence to demonstrate that his parents no longer supported him financially. Recently, Division III of this court affirmed a denial of a petition to modify child support because "given the holes in Mr. Saha's financial records, it was not possible to conclude that the entirety of his financial status had substantially changed," constituting "a sufficient reason to deny the petition." In re Marriage of Battista and Saha, No.37263-4-III, slip op. at 6 (Wash. Ct. App. Apr. 8, 2021), (unpublished) https://www.courts.wa.gov/opinions/pdf/372634_unp.pdf.[6] Likewise, Ding bore the burden to demonstrate a significant change in circumstances and failed to sufficiently support his petition. We adopt the

---

[5] Clerk's Papers 1383-1386 and 1382-1390 are cited in Ding's briefing, but those documents did not appear in the record before this court when the case was heard on July 27, 2022. The party seeking review bears the burden to designate clerk's papers for our review. RAP 9.6(a).

In his motion for reconsideration, Ding demonstrated that the materials had been properly designated for appeal, but that the Superior Court had failed to transmit them. The missing portions of the clerk's papers were received by this court on August 10, 2022, considered by the panel pursuant to the motion for reconsideration, and do not change our analysis or outcome of the case.

[6] While unpublished opinions are not binding upon this court, we rely on the Battista case as it is a factually similar case assisting with our analysis. GR 14.

reasoning in <u>Battista</u> and conclude that the court here did not abuse its discretion in finding there was no basis for modification.

II.     Designation of Primary Residential Parent

Ding next argues the court abused its discretion by finding he is not the primary residential parent.  The court refused to reverse the designations of the original child support order establishing Ding as obligor and Flax as obligee without any modification of the parenting plan in part because Ding is not the primary residential parent.  However, the March 18, 2020 child support order does not designate Flax as primary residential parent and in fact states, "The Court is not ordering a specific periodic adjustment schedule, <u>except if</u> Ding moves to Seattle and Flax <u>becomes</u> the primary residential parent, then a new Child Support Order should be entered."  (Emphasis added.)  This suggests not only that Flax is not the primary residential parent, but that <u>neither</u> parent is designated as such.  The record of the hearing on his petition to modify suggests that Ding seemed to agree with the court's mistaken understanding of that aspect of the child support order.[7]

While Ding now correctly identifies the court's mistaken understanding, he did not make the argument that he should be the primary residential parent during the hearing.  This "court may refuse to review any claim of error which was not raised in the trial court."  RAP 2.5(a).  Because Ding failed to present this challenge to the trial court, we decline to reach it on appeal.

---

[7] "THE COURT: Okay. And so my review of the parenting plan indicates that the primary residential parent is, in fact, Mr. Flax; is that correct?
    MR. DING: Yes."

III.    Designation of Obligor

Ding next assigns error to the court's determination that he is the obligor and Flax the obligee, arguing he does not owe a duty of support under the statute as his payment was reduced to zero dollars per month. An obligor parent is "the person owing a duty of support or duty of maintenance," while the obligee parent is "the custodian . . . to whom a duty of support or duty of maintenance is owed." RCW 26.18.020(13), (12). However, Ding cites no authority to support this contention that deviating his payment to zero removed his duty of support. The plain language of the statute does not require a certain dollar amount to be considered an obligor; rather, it is rooted in the "duty of support." RCW 26.18.020(13). The court's child support order explicitly states that Ding is "the parent who owes support" and establishes the amount of support owed as zero, but did not otherwise relieve him of the duty itself. Based on the order and the language of the statute, Ding is the obligor parent, and the court did not err in so finding in its denial of his motion to modify.[8]

IV.    Parenting Plan

Ding next alleges the trial court "require[d]" him to seek a parenting plan modification before he could request a child support transfer payment. Ding misconstrues the record. The court's finding states, "The Respondent further seeks a change of obligor/obligee and presents no authority for such a change

---

[8] Ding also repeatedly argues in briefing that the court tied the designations of obligor/obligee to the terms of the children's residential schedule contained in the parenting plan. This is not the case. The designations are rooted in the court's findings with regard to the resources available to Flax and Ding's respective households.

when the parenting plan has not been modified." Ding correctly notes that the designation of obligor/obligee is not contingent on residential placement; when parents share residential time one parent may be designated obligor based on a higher income. See In re Parentage of A.L., 185 Wn. App. 225, 236, 340 P.3d 260 (2014). In its 2020 child support order, the court named Ding the obligor based on his greater financial resources compared to Flax, not based on residential time. As Ding's financial circumstances had not substantially changed, his only avenue to modify the obligor designation was through an adjustment in residential time. See id. Therefore, the court did not abuse its discretion by merely identifying this procedural aspect of the overall case.[9]

V.     Speculation About Parenting Plan Modification

Ding next alleges the court based its denial of his petition on speculation about what may happen in a subsequent parenting plan modification. Before the hearing was conducted on Ding's petition to modify child support, Flax had filed a separate petition to modify the parenting plan. Ding asserts that the court improperly based its ruling on a presumption that Flax would prevail over Ding at the upcoming trial on the parenting plan. Ding alleges the commissioner presumed that because Flax had received an "Order on Adequate Cause to Change a Parenting/Custody Order" relating to his own "Petition to Change a Parenting Plan, Residential Schedule or Custody Order," restrictions on Ding's residential time would be ordered.

---

[9] Ding also assigns error to the court's consideration of Flax's bonus income. This determination was made in the court's March 2020 "Child Support Order," and as stated above, the deadline to appeal this order has long passed. RAP 5.2(a). We decline to reach this issue.

Ding misses the commissioner's point. Switching the roles of obligor and obligee requires filling a petition to modify the underlying parenting plan or demonstrating a substantial change in financial circumstances. The court correctly noted that, absent a parenting plan modification, Ding had no other avenue by which to alter these designations.[10]

VI.   Trial Court Fee Award

Ding next assigns error to the court's decision to award attorney fees to Flax and its denial of Ding's request for fees. The court ordered Ding to pay $4,774.50 in attorney fees after Flax argued Ding's motion was not "well-grounded in fact or law." The court held that Ding "present[s] no legal basis for his request to modify." Ding contends the assertion that his claims lacked authority is not supported by substantial evidence, that he has no ability to pay, and thus entering a fee against him constituted an abuse of discretion.

We review a challenge to attorney fees awarded in a family law matter for abuse of discretion. In re Marriage of Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002). The party bringing the challenge "must show that the court used its discretion in an untenable or manifestly unreasonable manner." In re Marriage of Mattson, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). Otherwise, the panel "must defer to the sound discretion of the trial court." In re Marriage of Griffin, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). A decision to award fees must be based on "a consideration that balances the needs of the spouse seeking fees against the

---

[10] Later, in October 2021, Ding filed his own "Petition to Change a Parenting Plan, Residential Schedule or Custody Order," which is silent on the obligor/obligee relationship, instead focusing on the ongoing conflict with Flax as to numerous other issues.

ability of the other spouse to pay." In re Marriage of Moody, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999).[11]

Ding cites to In re Marriage of Casey to refute the court's assertion that there was no legal basis for his motion to modify the obligor/obligee designations in his favor. See 88 Wn. App. 662, 967 P.2d 982 (1997). Following a decree of dissolution, Casey appealed the parts of the order that required him to pay child support, costs relating to transportation and health care, as well as his ex-wife's attorney fees. Id. at 664. Simultaneous to the decree, the trial court relieved the ex-wife of her child support obligation "because a learning disability restricts her earning capacity" and burdening her with an obligation would cause "substantial hardship." Id. at 665. Crucially in that case, the decree of dissolution incorporated the parenting plan. Id. at 664. Division II affirmed the trial court's decision to relieve the ex-wife of her support obligations; it only had the power to do so because the matter was properly before them based on Casey's appeal of the dissolution decree, which expressly incorporated the parenting plan. Id. Here, modification of the Flax-Ding parenting plan was not before the trial court; it could not separately act on the parenting plan. Therefore, any action that sought such an outcome had no basis in law. For this reason, the other authorities cited by Ding are also unavailing. Ultimately, Ding's petition had no basis in law because he failed to demonstrate a substantial change in circumstances and he could not alter the terms of the parenting plan through a petition to modify child support. Thus, the trial court's denial of a fee award to Ding was proper. The court did not

---

[11] See also DeVogel, 22 Wn. App. 2d at 59–60.

abuse its discretion in declining to award fees to Ding or in its order directing him to pay Flax's fees.

VII.    Fees on Appeal

Finally, Ding requests an award of fees on appeal pursuant to RAP 18.1. RAP 18.1(a) allows a party to recover attorney fees "[i]f applicable law grants" that party the right to request fees.  The party must also devote a section of their brief to that request.  Ding requests fees "pursuant to RAP 18.1 as the financially disadvantaged party."  However, he fails to cite any applicable law that grants him "the right to recover reasonable attorney fees or expenses," he has not prevailed on appeal, and his bare assertion that he is the "financially disadvantaged party" is contrary to the court's express, and unchallenged, findings.  See RAP 18.1(a). Accordingly, his request for fees on appeal is denied.

Affirmed.

WE CONCUR: